103 Wn.2d 610 (1985)
694 P.2d 27
THE STATE OF WASHINGTON, on the Relation of Wanda A. Boyles, ET AL, Appellants,
v.
WHATCOM COUNTY SUPERIOR COURT, ET AL, Respondents.
No. 50141-6.
The Supreme Court of Washington, En Banc.
January 11, 1985.
*611 John D. Alkire of American Civil Liberties Union, for appellants.
Randall Watts, Deputy Prosecuting Attorney, Ian R. Sievers, Assistant City Attorney, and Robert S. Jones, Public Defender, for respondents.
DIMMICK, J.
This case is before us on direct appeal of the trial court's summary judgment dismissal of appellant Boyles' case for lack of standing. Additionally, Boyles urges this court to grant her original summary judgment motion to enjoin respondent county offices from offering a single work release program which mandates religious activities.[1] We reverse as to standing but dismiss as to the underlying action, finding that the issue originally raised before this court is now moot.
In her original appeal to this court, Boyles presented two issues:
1. Whether a citizen has standing to challenge governmental *612 action assigning prisoners to a nongovernmental work release program which requires religious activities, when the citizen is not personally involved in the program and when no public money is expended directly on the program.
2. Whether government officials violate the first amendment to the United States Constitution and/or article 1, section 11 (amendment 34) of the Washington Constitution when they assign prisoners to a nongovernmental work release program which requires religious activity, and when there is no alternative nonreligious work release program.
Subsequent to the hearing on that appeal, the County filed a motion with this court to dismiss the action as moot. The County argues that because its new jail is now open and offering an alternative work release program, the issue has no significance. Boyles has in turn filed a brief in opposition to dismissal. She contends that the disparity between the in-jail work release program and the religiously oriented work release program still represents an unconstitutional advancement of religion and an infringement on the free exercise of religion.
[1] Boyles' original complaint sought prohibition of the County's use of the Lighthouse Mission unless the mandatory worship requirement ceased or until an equivalent program was provided. Argument before this court, however, assumed that the County would accommodate the entire work release program within the new jail. In fact, the County stated that this was its intention. Consequently, the issue of equivalency was neither briefed nor argued.
We are in effect now presented with a different case, involving new, disputed facts. This new case is not properly before us on appeal. We, therefore, dismiss Boyles' constitutional claim as moot.
The remainder of our opinion addresses the issue of Boyles' standing to sue, since it is a threshold requirement to any future action. A brief overview of the facts is helpful to understanding our reasoning as to standing. Because the trial judge dismissed on the basis of lack of standing, there *613 were no findings of fact. The original facts before us, however, were basically undisputed.
Boyles is a resident and taxpayer of Whatcom County. In April 1982, she requested the Attorney General of the State of Washington to commence an action to enjoin assignment of county prisoners to a work release program conducted by the Lighthouse Mission, Inc. The Attorney General declined, and this action was initiated.
The Mission's involvement in the county work release program began in response to an overcrowding situation in the county jail. In 1980, the County sought an outside organization to accept work release prisoners. Prior to this date, the work release program had operated through the county jail facility for 14 years. The Lighthouse Mission, Inc., was the only organization willing to house the program in 1980. The Mission is a church supported organization. The work release program is generally self-supporting, however, with participating prisoners charged $10 per day. Indigent prisoners are accommodated through alternative service or a waiver of the charge. No public funds are spent on the Mission program except for the incidental effect of publicly paid personnel who determine eligibility and assignment to the program.
With the opening of the new jail facility, the County now offers an alternative to the Mission program. It still, however, assigns prisoners to the Mission. The thrust of Boyles' new argument is that the jail work release alternative is more restrictive, and, therefore, less desirable than assignment to the Mission work release program. In addition to raising a new issue, she raises questions of fact as to the details of the present jail program and the degree of similarity between the two programs. As noted above, neither of these is properly before this court.
As to the issue of Boyles' standing to raise the constitutional questions, her connection to the alleged injury is attenuated. She alleges no direct impact as a present or past offender in the county or city jail. Instead, she brings action as a taxpayer alleging that official government acts *614 amount to an unconstitutional support of religion.
[2] This court recognizes litigant standing to challenge governmental acts on the basis of status as a taxpayer. See, e.g., Tacoma v. O'Brien, 85 Wn.2d 266, 269, 534 P.2d 114 (1975); Calvary Bible Presbyterian Church v. Board of Regents, 72 Wn.2d 912, 917-18, 436 P.2d 189 (1967), cert. denied, 393 U.S. 960 (1968); Fransen v. Board of Natural Resources, 66 Wn.2d 672, 404 P.2d 432 (1965). Generally, we have required that a taxpayer first request action by the Attorney General and refusal of that request before action is begun by the taxpayer. See, e.g., Tacoma v. O'Brien, supra; Citizens Coun. Against Crime v. Bjork, 84 Wn.2d 891, 893, 529 P.2d 1072 (1975). We have recognized, however, that even that requirement may be waived when "such a request would have been useless." Farris v. Munro, 99 Wn.2d 326, 329-30, 662 P.2d 821 (1983).
The recognition of taxpayer standing has been given freely in the interest of providing a judicial forum when this state's citizens contest the legality of official acts of their government. We have acknowledged that the value of taxpayer suits generally outweighs any infringement on governmental processes. Calvary Bible, at 917; Fransen, at 677. Only when such recognition would encourage "unwarranted harassment" of public officials have we implied that standing would be denied. Calvary Bible, at 918. The only injury that Boyles alleges is one common to all citizens: that is, the right to be protected from official governmental acts which favor one religion over another. Her claim is similar to that recognized by this court in Calvary Bible. In that case we granted standing to the ministers of two churches, while denying standing to the churches as such, requiring that "plaintiff must at least be a taxpayer." Calvary Bible, at 917. The ministers contested a class at the University of Washington which taught the Bible as literature, arguing violations of their constitutionally protected religious freedom.
The facts in Calvary Bible indicate greater involvement of public funds than do the undisputed facts in this case. *615 Funding of the Bible course is more directly attributable to tax moneys than the indirect funding of government officials in assigning prisoners to the work release program at the Lighthouse Mission. In this regard, the present case is more analogous to Perry v. School Dist. 81, 54 Wn.2d 886, 344 P.2d 1036 (1959). The activities found to be unconstitutional in Perry involved teachers' time spent in distributing cards and making announcements of a religious released-time program held off school grounds, as well as access to school property by religious representatives for similar purposes. Perry, at 898.
Although Boyles alleged injury is generalized, we recognize her standing to sue on the basis of taxpayer status. Consistent with our past holdings, she has sought and been denied enforcement of her complaint by the Attorney General. Accordingly, the trial court is reversed.
The issue of an alternative nonreligious work release program became moot with the County's provision of such a program within its new jail facility. Boyles' opposition to the County's motion to dismiss raises issues and facts never before the trial court. We therefore hold that the constitutional claim raised in her original appeal is moot. This action is thus dismissed.
UTTER, PEARSON, and ANDERSEN, JJ., concur.
DOLLIVER, J., concurs in the result. BRACHTENBACH, J. (concurring in part, dissenting in part)
I concur in the majority's holding that the plaintiff has standing, but I do so on the basis of what I conceive to be a fundamental principle quite apart from earlier precedent. I, however, dissent to the majority's holding that the issue originally raised before this court is now moot.
Defendants in criminal proceedings were before the court. I cannot imagine more awesome exercise of the power of the State than the decisionmaking power of a judge to literally determine the fate of the particular defendant before that court. That process should not compromise *616 fundamental rights of those defendants.
Of all governmental institutions, the courts should be subject to challenge in a case where the plaintiff, whether successful or not, alleges that the court, in the name of reality or expediency, violates a citizen's constitutional rights. For this reason I would find that when it is alleged that the court itself violates constitutional rights, the showing for standing is lessened. I would remand for trial consistent with this opinion.
From the original record before this court it is clear that prisoners in Whatcom County had two choices: (1) to go to jail and thereby be separated from family, from employment and from freedom; or (2) to go into the Lighthouse Mission work release program which includes requirements discussed later. Subsequent to argument before this court the new Whatcom County jail facility opened giving the defendants a third choice: to go into the jail work release program.
Although the prisoners now have the choice between the two work release programs, when the jail's program is full they will be required to remain in jail (on the jail's program waiting list) unless they choose the nonmandatory Mission program. The majority contends that the third choice of the nonreligious work release program raises a new issue with new disputed facts presenting a new case not properly before this court on appeal. In holding that plaintiff's constitutional claim is now moot, the majority focuses on the facts at any particular point in time, rather than on the underlying issue. In so doing, the majority errs.
Boyles' original complaint sought prohibition of the County's use of the Lighthouse Mission unless the mandatory worship requirement ceased or until an equivalent program was provided. The issue before the court (regardless of how it is phrased) remains the same: whether government officials violated the first amendment to the United States Constitution and/or article 1, section 11 (amendment 34) of the Washington Constitution when they assigned prisoners to a nongovernmental work release program *617 which requires religious activity, and when there is no equivalent alternative nonreligious work release program.
Plaintiff alleges in her Brief in Opposition to Respondents' Motion To Dismiss for Mootness that the new jail work release program is not equivalent to the Mission work release program because the Mission continues to offer the more attractive program with a greater amount of freedom given prisoners. The Mission continues to have a rule which states:
While in this program, you [the defendant] will be expected to attend some of the Christian services which are provided. The staff will decide with you what will be appropriate for your schedule.
Clerk's Papers, at 80.
It is tempting to write a long opinion about the constitutional provisions regarding religion, but I stop short. I state simply that although the issue remains alive and well, the facts remain at issue. Determination of what options exist and of the differences, if any, between the options is essential to our consideration of a violation of the state and federal constitutional prohibitions against state establishment of religion or interference with an individual's right to the free exercise of religion. I would therefore remand for trial on this issue.
WILLIAMS, C.J., concurs with BRACHTENBACH, J.
DORE, J. (concurring in part, dissenting in part)
I concur in the majority's resolution of the question of standing. I dissent to the majority's dismissal of the underlying action as moot.

MOOTNESS
The basis of the underlying action in this appeal is whether government officials violate the first amendment to the United States Constitution and/or article 1, section 11 (amendment 34) of the Washington State Constitution when they assign prisoners to a nongovernmental work release program which requires religious activity, and when *618 there is no alternative equivalent nonreligious work release program.
Boyles' original complaint sought prohibition of the County's use of a religiously oriented work release or the institution of an equivalent program without a mandatory worship requirement.
Subsequent to the hearing of the appeal, the County moved to dismiss the action as moot. The County contends that because an alternate work release program is offered, the issue is no longer of significance. Boyles, in turn, contends that the disparity between the in-jail alternative work release program and the religiously oriented work release program continues to represent an unconstitutional advancement of religion and an infringement of the free exercise of religion.
I agree that a substantial disparity between the two programs would represent an unconstitutional advancement of religion and an infringement of the free exercise of religion. However, because there were no findings of fact on the issue of equivalency, I would reverse and remand for trial consistent with this opinion.
The majority finds that because new facts are at issue concerning the equivalency of the alternate work release programs, the claim raised in the original appeal is moot and thus dismissal is appropriate.
It is evident, however, that Boyles desires to continue this action and has standing to do so. I find it inappropriate to require Boyles to file a new cause of action and await a new trial date. The issue of the constitutionality of the assignment to religiously oriented work release will be tested at that time. It is, therefore, clear that this matter is not moot.
This court should not forfeit its opportunity to provide the trial court with sufficient guidance to resolve this issue of continuing and substantial public interest.
In Citizens Coun. Against Crime v. Bjork, 84 Wn.2d 891, 895, 529 P.2d 1072 (1975), we stated:

*619 While this court is reluctant to give advisory opinions, it has done so on extraordinary occasions, a notable example being Distilled Spirits Institute v. Kinnear, 80 Wn.2d 175, 492 P.2d 1012 (1972). We there said that where the question presented is one of great public interest and has been brought to the court's attention in an action wherein it is adequately briefed and argued, and where it appears that an opinion of the court would be beneficial to the public and to other branches of the government, it may exercise its discretion and render a "declaratory judgment" to resolve a question of constitutional interpretation.
Accord, Seattle v. State, 100 Wn.2d 232, 668 P.2d 1266 (1983).
The subject case is one of great public interest, has been adequately briefed, and involves constitutional issues. I, therefore, address the substantive issue involved.

ADVANCEMENT OF RELIGION
Boyles contends that the County's actions in this case amount to an unconstitutional advancement of religion and an infringement of the prisoners' free exercise of religion under both federal and state constitutions. Because Boyles is not arguing that her own free exercise rights are being infringed, her two contentions merge  governmental acts which coerce or encourage persons to attend religious services can be considered an advancement of a particular religion.
The County argues in turn that the law recognizes necessary limitations on prisoners' rights; that participation in work release is a privilege, not a right; that participation is voluntary and, therefore, does not interfere with the free exercise of religion; that the program is consistent with an accommodation of religion and does not represent an excessive entanglement in religion.
The state and federal constitutions prohibit government establishment and support of religion, at the same time recognizing a need to accommodate the individual's practice of religion.

*620 Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; ...
U.S. Const. amend. 1.
Absolute freedom of conscience in all matters of religious sentiment, belief and worship, shall be guaranteed ... No public money or property shall be appropriated for or applied to any religious worship, exercise or instruction, or the support of any religious establishment: Provided, however, That this article shall not be so construed as to forbid the employment by the state of a chaplain for such of the state custodial, correctional and mental institutions as in the discretion of the legislature may seem justified.
Const. art. 1, § 11 (amend. 34).
This court has generally interpreted the state constitution more restrictively than the federal constitution. Compare, e.g., Everson v. Board of Educ., 330 U.S. 1, 91 L.Ed. 711, 67 S.Ct. 504, 168 A.L.R. 1392 (1947) (allowing state funding of transportation for parochial school students) with Visser v. Nooksack Vly. Sch. Dist. 506, 33 Wn.2d 699, 207 P.2d 198 (1949) (disallowing state funding of transportation for parochial school students). See also Witters v. Commission for the Blind, 102 Wn.2d 624, 689 P.2d 53 (1984).
The United States Supreme Court articulated its establish-clause test in Lemon v. Kurtzman, 403 U.S. 602, 29 L.Ed.2d 745, 91 S.Ct. 2105, reh'g denied, 404 U.S. 876, 30 L.Ed.2d 123, 92 S.Ct. 24 (1971). This test requires (1) a secular purpose, (2) a primary effect that neither advances nor inhibits religion, and (3) avoidance of excessive entanglement with religion. Lemon, at 612-13.
Of particular importance to this case is both the United States Supreme Court's and this court's emphasis on noncoercion. In this context, coercion includes even subtle pressure or encouragement. In one case, the United States Supreme Court found no evidence of coercion in allowing public school students to attend instruction outside the school during school hours. Zorach v. Clauson, 343 U.S. 306, 96 L.Ed. 954, 72 S.Ct. 679 (1952). The Court distinguished *621 between a case in which "the force of the public school was used to promote that instruction" and the Zorach case which merely accommodates that instruction. Zorach, at 315.
In Perry v. School Dist. 81, 54 Wn.2d 886, 344 P.2d 1036 (1959), this court did not find any unconstitutional practice in excusing children from school to attend religious programs, but the court did find the distribution of sign-up cards and announcements by school personnel or religious representatives on school property violative of both article 1, section 11 (amendment 34) and article 9, section 4 of the state constitution. Perry, at 898.
Coercion is also recognized when a citizen must give up a publicly provided benefit in order to adhere to religious principles. See, e.g., Thomas v. Review Bd., 450 U.S. 707, 67 L.Ed.2d 624, 101 S.Ct. 1425 (1981); Sherbert v. Verner, 374 U.S. 398, 10 L.Ed.2d 965, 83 S.Ct. 1790 (1963). Both of these cases involve denial of state unemployment compensation for plaintiffs' failure to fulfill certain conditions. The Court found Sherbert's and Thomas' religious convictions were substantially burdened. In order to qualify for benefits, Sherbert would have had to work on Saturday contrary to her religious principles, and Thomas would have had to violate his conscience to produce weapons. Religious liberty may not be "infringed by the denial of or placing of conditions upon a benefit or privilege." Sherbert, at 404.
Although prisoners' rights may be limited in the interest of prison security and order, prisoners do not give up all First Amendment rights upon entering jail. See Procunier v. Martinez, 416 U.S. 396, 40 L.Ed.2d 224, 94 S.Ct. 1800 (1974); Cruz v. Beto, 405 U.S. 319, 31 L.Ed.2d 263, 92 S.Ct. 1079 (1972). In Procunier, the Court held that censorship of prisoners' mail requires a substantial government interest and the least intrusive method. Procunier, at 413-14. In Cruz, the Court held that a Buddhist prisoner could not be denied an opportunity to pursue his religion when prisoners of other faiths were allowed such opportunity. Cruz, at 322.
*622 The federal court in Owens v. Kelley, 681 F.2d 1362 (11th Cir.1982) made a determination particularly pertinent to the instant action. Owens reversed a summary judgment and remanded for a determination of whether a required probation course was religiously oriented.
While we intimate no position on the ultimate resolution of this issue it is clear that a condition of probation which requires the probationer to adopt religion or to adopt any particular religion would be unconstitutional.
(Citations omitted.) Owens, at 1365.
The principle arising from all of these decisions is the maintenance of strict neutrality in the accommodation of religion.
With the completion of the county jail facility and establishment of the in-jail work release program as an alternative to the religiously oriented Mission program, the question of strict neutrality (equivalence of the work release programs) becomes paramount.
In order for the available choice between the work release program in the jail and that in the Mission to pass constitutional muster, it must be shown that the two programs are comparable and equivalent.
Determination of the equivalency of the alternate work release programs is essential to a resolution of the question of a violation of the state and federal constitutional prohibitions against state establishment of religion or interference with an individual's right to the free exercise of religion.
In the event the Mission's work release program is determined to be far more desirable for an offender than is the new jail's work release program, the County is not maintaining the necessary governmental neutrality required by both state and federal constitutions.
I would remand to the trial court with instructions to determine the factual issue of "governmental neutrality" consistent with the rationale of this opinion.
Reconsideration denied February 15, 1985.
NOTES
[1] The City of Bellingham asserts that it should be dismissed as a party because Boyles is not a resident of that city. Although the City does concede that she has undoubtedly paid some minimal tax as a result of shopping in Bellingham, it argues that residence in the jurisdiction being sued is a minimal requirement, relying on language in Seattle Sch. Dist. 1 v. State, 90 Wn.2d 476, 585 P.2d 71 (1978). Boyles responds that the issue of independent standing against the City is of no consequence. The City has a contract with the County under the work release program, and a decision as to the County would operate against the City. The issue is thus moot.