**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

FILE
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE NOV 1 2 2015

Madsen C.J.
CHIEF JUSTICE

This opinion was filed for record
at 10:45 am on Nov. 12, 2015

for Ronald R. Carpenter
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| SHERRIL HUFF, an individual taxpayer and King County Director of Elections; MARY HALL, an individual taxpayer and Thurston County Auditor; DAVID FROCKT, an individual taxpayer and Washington State senator; REUVEN CARLYLE, an individual taxpayer and Washington State representative; EDEN MACK, an individual taxpayer; TONY LEE, an individual taxpayer; ANGELA BARTELS, an individual taxpayer; GERALD REILLY, an individual taxpayer; and PAUL BELL, an individual taxpayer, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | No. 92075-3 |
| Appellants, | ) ) | En Banc |
| v. | ) ) | |
| KIM WYMAN, in her official capacity as Secretary of State for the State of Washington; TIM EYMAN; LEO J. FAGAN; and M.J. FAGAN, | ) ) ) ) ) | |
| Respondents. | ) ) ) | Filed: NOV 1 2 2015 |

MADSEN, C.J.—Appellants[1] seek reversal of a King County Superior Court order denying appellants' motion to enjoin the secretary of state from placing Initiative 1366 (I-1366) on the November 2015 general election ballot. On September 4, 2015, this court

---

[1] Sherril Huff, Mary Hall, David Frockt, Reuven Carlyle, Eden Mack, Tony Lee, Angela Bartels, Gerald Reilly, and Paul Bell.

No. 92075-3

issued an order, with this opinion to follow, affirming the trial court's denial of

appellants' motion for injunctive relief.[2]

FACTS

Respondents[3] filed I-1366 in January 2015. As filed with the secretary of state,

the proposed initiative measure contained the boldface and larger print heading "2/3

Constitutional Amendment." Clerk's Papers (CP) at 14 (capitalization omitted). The

attorney general's official ballot title states:

> Statement of Subject: Initiative Measure No. 1366 concerns
> state taxes and fees.
> Concise Description: This measure would decrease the sales
> tax rate [from 6.5 percent to 5.5 percent] unless the legislature
> refers to voters a constitutional amendment requiring two-
> thirds legislative approval or voter approval to raise taxes.

CP at 97. "Raises taxes" is defined in section 6 of the initiative as "any action or

combination of actions by the state legislature that increases state tax revenue deposited

in any fund, budget, or account, regardless of whether the revenues are deposited into the

general fund." CP at 19. On July 29, 2015, Secretary of State Kim Wyman certified that

I-1366 had received a sufficient number of signatures for the initiative to be placed on the

ballot for the November 2015 election.

Appellants Huff et al. sought to enjoin the initiative from being placed on the

ballot by filing an action in King County Superior Court, claiming that the initiative went

beyond the scope of the people's initiative power under article II, section 1 of the state

---

[2] On September 18, 2015, appellants filed a motion requesting oral argument. The same day, respondent sponsors filed an answer, also requesting this court grant appellants' request for oral argument. Appellants' motion requesting oral argument is denied.
[3] Kim Wyman, Tim Eyman, Leo J. Fagan, and M.J. Fagan.

constitution and was therefore not proper for direct legislation. On August 14, 2015, the trial court ruled that (1) appellants had standing to challenge the initiative as taxpayers, county election officials, and legislators, (2) this was a challenge to the scope of the initiative and therefore appropriate for preelection review, (3) the "fundamental, stated and overriding purpose" of I-1366 was to amend the constitution in violation of article II of the state constitution, (4) I-1366 violated article XXIII of the state constitution, and (5) appellants were unable to show a "clear legal or equitable right" to an injunction under *Rabon v. City of Seattle*, 135 Wn.2d 278, 957 P.2d 621 (1998), because this court has yet to decide whether preelection restrictions on initiatives infringe on free speech rights under the First Amendment or article I, section 5 of our state constitution. CP at 132-38.

The same day, appellants sought direct, accelerated review in this court. We granted review, and on September 4, 2015, issued an order affirming the trial court, with an opinion to follow, stating that "[a]ppellants have not made the clear showing necessary for injunctive relief as required by *Rabon v. City of Seattle*." Order, *Huff v. Wyman*, No. 92075-3, at 2 (Wash. Sept. 4, 2015).

This case presents three issues: (1) whether appellants have standing to seek an injunction, (2) whether this case is justiciable, and (3) whether appellants meet the elements necessary for injunctive relief. Without expressing any opinion on the general constitutionality of I-1366, or the free speech issues mentioned by the trial court, we hold that appellants have taxpayer standing and that this case is justiciable. However, we hold that appellants did not make a clear showing that the subject matter of the initiative is not

3

within the broad scope of the people's power of direct legislation and, as such, failed to demonstrate a clear legal right for injunctive relief. We therefore affirm the trial court's denial of such relief on a different basis. *See LaMon v. Butler*, 112 Wn.2d 193, 200-01, 770 P.2d 1027 (1989) (reviewing court may affirm the trial court's denial of an injunction on any basis supported by the briefing and record below).

## STANDARD OF REVIEW

We review a trial court's decision on a preliminary injunction for an abuse of discretion. *Wash. Fed'n of State Emps., Council 28 v. State*, 99 Wn.2d 878, 887, 665 P.2d 1337 (1983). Discretion is abused if the decision is based on untenable grounds, or the decision is manifestly unreasonable or arbitrary. *Id.* An injunction is "frequently termed 'the strong arm of equity,' or a 'transcendent or extraordinary remedy,' and is a remedy which should not be lightly indulged in, but should be used sparingly and only in a clear and plain case." *Kucera v. Dep't of Transp.*, 140 Wn.2d 200, 209, 995 P.2d 63, 68 (2000) (footnotes omitted) (quoting 42 AM. JUR. 2D *Injunctions* § 2, at 728 (1969)). Additionally, we may affirm the trial court on any basis supported by the briefing and record below. *LaMon*, 112 Wn.2d at 200-01.

The establishment of a clear right is of particular importance where appellants are seeking the extraordinary remedy of preventing an initiative from being placed on the ballot for a vote of the people. The initiative is "[t]he first power reserved by the people." CONST. art. II, § 1(a). This power is self-executing. CONST. art. II, § 1(d). It has been a long-standing rule of our jurisprudence that we refrain from inquiring into the

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

constitutionality or validity of an initiative before it has been enacted. *Futurewise v. Reed*, 161 Wn.2d 407, 410, 166 P.3d 708 (2007) (citing *Coppernoll v. Reed*, 155 Wn.2d 290, 297, 119 P.3d 318 (2005)). Appellants can obtain injunctive relief only if they show a clear right based on a demonstration that the procedural requirements for placing the measure on the ballot have not been met (i.e., not enough signatures) or that the subject matter is not proper for direct legislation. *Id.* at 411 (citing *Coppernoll*, 155 Wn.2d at 298-99).

## ANALYSIS

### Standing

Appellants argue that they have standing as taxpayers, county election officials, and legislators. Respondent secretary of state agrees that the appellants have standing as taxpayers but not as county election officials or legislators. Respondent sponsors contend that appellants do not have standing in any capacity. We hold that the appellants have taxpayer standing and do not address the issues of county election official or legislator standing.

This court has granted taxpayer standing to challenge governmental acts in limited circumstances. *See, e.g., State ex rel. Boyles v. Whatcom County Superior Court*, 103 Wn.2d 610, 614-15, 694 P.2d 27 (1985); *City of Tacoma v. O'Brien*, 85 Wn.2d 266, 269, 534 P.2d 114 (1975); *Calvary Bible Presbyterian Church of Seattle v. Bd. of Regents of Univ. of Wash.*, 72 Wn.2d 912, 917-18, 436 P.2d 189 (1967); *Fransen v. State Bd. of Nat. Res.*, 66 Wn.2d 672, 404 P.2d 432 (1965). The challenger must be a taxpayer, request

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

that the attorney general take action, and have the request denied before commencing her own action. *Boyles*, 103 Wn.2d at 614. However, taxpayer disagreement with a discretionary governmental act is not enough to convey standing. *Greater Harbor 2000 v. City of Seattle*, 132 Wn.2d 267, 281, 937 P.2d 1082 (1997). Furthermore, if the grant of standing would encourage "'unwarranted harassment'" of public officials, it will be denied. *Boyles*, 103 Wn.2d at 614 (quoting *Calvary Bible*, 72 Wn.2d at 918).

Here, appellants allege taxpayer status, challenge the constitutionality of a government act, and had their request that the attorney general take action denied. CP at 21-24. The appellants do not challenge a discretionary decision. Rather, they challenge the exercise of constitutional authority that they contend is beyond what the constitution allows—namely, placing an initiative on the ballot that exceeds the scope of the people's article II power and violates article XXIII of the state constitutiton. Granting standing on this narrow issue will not lead to harassment of public officials; it is consistent with the recognized role that taxpayer suits play in determining whether a government official acts lawfully. We conclude, therefore, that appellants have taxpayer standing to maintain their claim.

Respondents dispute both county election official and legislator standing. However, because the county election officials and legislators have demonstrated taxpayer standing, we need not address whether they have standing in a different capacity.

6

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Justiciability

Justiciability is a threshold requirement and must be met before proceeding to the litigant's claims. *Coppernoll*, 155 Wn.2d at 300. This requirement focuses on whether the question sought to be adjudicated is appropriate for the court to address. Respondent secretary of state acknowledges that "whether I-1366 falls within the people's power of initiative is an issue of significant and continuing public importance" and is therefore justiciable. Br. of Resp't Wyman at 7. Respondent sponsors argue that because the initiative has not yet been passed, there is nothing on which to rule. In reviewing an initiative, whether or not a case is justiciable depends on the type of review sought. *Coppernoll*, 155 Wn.2d at 300. While this court may not rule on the constitutional validity of a proposed initiative, whether an initiative is beyond the scope of the power the people reserved to themselves in article II, section 1 of the state constitution is appropriate for preelection review. *Id.* at 299 ("Subject matter challenges do not raise concerns regarding justiciability because postelection events will not further sharpen the issue (i.e., the subject of the proposed measure is either proper for direct legislation or it is not)."). Here the question to be addressed is not the constitutionality of the initiative. Rather, the question is whether the initiative is within the broad scope of the people's reserved power. To be within the scope of this reserved power, an initiative must propose the enactment of a law and not the amendment of the constitution. *See Ford v. Logan*, 79 Wn.2d 147, 156, 483 P.2d 1247 (1971) ("the initiative power set forth in

Const. art. 2 does not include the power to directly amend or repeal the constitution itself"); *accord Coppernoll*, 155 Wn.2d at 304; *Amalgamated Transit Union Local 587 v. State*, 142 Wn.2d 183, 204, 11 P.3d 762 (2000).

Appellants here maintain that I-1366 is inappropriate for direct legislation because its "fundamental and overriding purpose" is to amend the constitution. *Phila. II v. Gregoire*, 128 Wn.2d 707, 719, 911 P.3d 389 (1996). This is a subject matter challenge to whether or not the initiative is within the scope of the people's initiative power under article II, section 1, and, as such, is justiciable. *See Coppernoll*, 155 Wn.2d at 301 (holding petitioners' claim as to scope was pretext for a substantive challenge and thus not justiciable).

Injunctive relief

To be entitled to an order enjoining the secretary of state from placing I-1366 on the November 2015 general election ballot, the appellants must establish (a) a clear legal or equitable right, (b) a well-grounded fear of immediate invasion of that right, and (c) that the act complained of will result in actual and substantial injury. *Rabon*, 135 Wn.2d at 284. Failure to establish any one of these requirements results in a denial of the injunction. *Kucera*, 140 Wn.2d at 210 (citing *Wash. Fed'n*, 99 Wn.2d at 888). These criteria must also "be examined in light of equity, including the balancing of the relative interests of the parties and the interests of the public, if appropriate." *Rabon*, 135 Wn.2d at 284. We hold that appellants have not made a sufficient showing of a clear legal or equitable right entitling them to relief.

Clear legal or equitable right

In determining whether there is a clear legal or equitable right, "the court examines the likelihood that the moving party will prevail on the merits." *Id.* at 285 (citing *Wash. Fed'n*, 99 Wn.2d at 888; *Tyler Pipe Indus., Inc. v. Dep't of Revenue*, 96 Wn.2d 785, 792, 638 P.2d 1213 (1982)). A doubtful case will not warrant an injunction. *Id.* The issue here is whether the appellants have shown they have a clear legal or equitable right to enjoin I-1366 from being placed on the ballot. It must be "clear" that an initiative is outside of the legislative power to warrant removing it from the ballot. *Coppernoll*, 155 Wn.2d at 305. We look to the initiative's "'fundamental and overriding purpose'" to decide whether it is within the legislature's power to enact. *Id.* at 302 (quoting *Phila. II*, 128 Wn.2d at 719). The superior court found that I-1366's "fundamental, stated and overriding purpose" was to amend the constitution. CP at 134. The parties agree that the Washington constitution may not be amended by initiative. *Id.* The superior court therefore concluded that I-1366 exceeded the scope of the people's initiative power under article II, section 1 and violated the constitutional amendment process of article XXIII. CP at 135.

This court has only once considered a challenge to the scope of a statewide initiative as exceeding the legislative power granted to the people by article II, section 1. *Phila. II*, 128 Wn.2d at 716-17. In *Philadelphia II*, the "fundamental and overriding purpose" of the initiative was to enact federal legislation that was "simply not within

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Washington's power to enact." *Id.* at 719-20. It was clear in that case that the Washington State Legislature would not be able to enact federal law. *Id.* at 720. The appellants here have not shown the fundamental and overriding purpose of I-1366 with the same level of clarity.

The parties' arguments demonstrate that "the fundamental and overriding purpose" of I-1366 depends on the prism through which one views its provisions. Appellants, who view it as seeking to amend the constitution, focus on the heading "2/3 Constitutional Amendment" and the fact that the sponsors ask that checks in support of the initiative be made out to "2/3 Constitutional Amendment" and refer to their initiative as "2/3 for Taxes Constitutional Amendment." *See* www.voterswantmorechoices.com. Appellants also point to the superior court's finding of fact 21, which stated that the sponsors, not unnamed supporters, "advertised the initiative as an effort to amend the [c]onstitution." CP at 133. In this light, although the text of the initiative does not explicitly call for or mandate an amendment, the threat of a $1.4 billion-a-year tax cut[4] is obviously intended to bring pressure on the legislature to exercise its power to propose a constitutional amendment in violation of articles II and XXIII.

On the other hand, respondents view I-1366 as containing a form of conditional legislation that would operate to reduce the sales tax unless the legislature takes specified action to amend the constitution. They argue that the initiative is nothing more than contingent legislation to reduce taxes, a form of direct legislation within the legislature's

---

[4] This figure is taken from the Fiscal Impact Statement for I-1366, www.ofm.wa.gov/ballot/2015/I-1366_Fiscal_Impact_Statement.pdf.

No. 92075-3

power.[5] Viewed in this light, the purpose of I-1366 is the enactment of law and not the amendment of the constitution.

In the present context of subject matter preelection review, the fundamental and overriding purpose is not sufficiently clear. Had each claimed purpose been the sole and explicit purpose of I-1366, the outcome would be obvious. If the initiative called only for a reduction in the sales tax, there would be no preelection issues. If it called only for a two-thirds constitutional amendment, it would clearly be outside the scope of the people's initiative power. This court has never decided a case in which an initiative offered contingent alternatives and, if so, whether one invalid purpose would prevent it from being on the ballot.[6] As drafted, it is not clear that there is only one purpose to this initiative and that the other is incidental, "merely an ephemeral stepping stone" to the stated purpose. *Phila. II*, 128 Wn.2d at 719.

---

[5] This court has previously dealt with the issue of contingent legislation an held that, as a general proposition, contingent legislation does not violate the constitution. *See Brower v. State*, 137 Wn.2d 44, 55-56, 969 P.2d 42 (1998) ("The power to enact contingent legislation has clearly been recognized. . . . The Legislature has authority both to refer a measure to the people and to condition the effectiveness of an enactment upon the happening of a future event."); *State v. Storey*, 51 Wash. 630, 632, 99 P. 878 (1909) ("[t]he mere fact that the act does not take effect until the contingency arises, does not indicate a delegation of legislative power, even where the contingency depends upon the action of certain persons"). *But see also Amalgamated Transit*, 142 Wn.2d at 244 (holding that initiatives making future legislative enactments of a particular class tax increases contingent on voter approval violates article II, section 1).

[6] *See Ford v. Logan*, 79 Wn.2d 147, 483 P.2d 1247 (1971) (purpose was to repeal King County Charter); *Seattle Bldg. & Constr. Trades Council v. City of Seattle*, 94 Wn. 2d 740, 748, 620 P.2d 82 (1980) ("[T]he obvious intent and thrust of initiative 21" was to forbid continuation of the I-90 project); *Phila. II*, 128 Wn.2d at 719 (finding valid state procedures affected by the initiative but that those changes were "incidental to the primary goal of the initiative"); *Maleng v. King County Corr. Guild*, 150 Wn.2d 325, 329, 76 P.3d 727 (2003) (Initiative's purpose was to reduce the number of council members from 13 to 9); *Coppernoll*, 155 Wn.2d at 293 (purpose was to "'change laws governing claims for negligent healthcare'").

11

No. 92075-3

In light of the injunction standard, appellants cannot meet their burden by showing only that *one* purpose of the initiative is to seek adoption of a constitutional amendment. They must clearly show this purpose is the fundamental and overriding purpose. Due to the conceivable alternative view that I-1366 proposes conditional legislation, appellants have not met their burden to clearly demonstrate—certainly not to the level of clarity in *Philadelphia II*—that the initiative is beyond the scope of the reserved legislative power as is necessary to obtain injunctive relief.[7]

## CONCLUSION

Because we hold that the first prong of the *Rabon* factors was not met, we need not address whether appellants feared an immediate invasion of that right, or whether appellants would suffer actual and substantial injury. The superior court's decision hinged on free speech concerns; however, because our determination that appellants have not established a clear right is dispositive of this case, it is unnecessary to answer the question of whether subject matter, substantive, or procedural preelection review of an

---

[7] Our decision today does not hold that I-1366 is necessarily within the scope of the people's initiative power. We hold only that appellants have not met their high threshold burden of showing that I-1366 is clearly beyond the scope of the initiative power in order to warrant a preliminary injunction. To definitively decide that question in this context would be inappropriate because in the context of a preliminary injunction, the reviewing court "is not to adjudicate the ultimate rights in the case." *Kucera*, 140 Wn.2d at 216-17. This "court may reach the merits of any purely legal question provided that the interim harm factor is undisputed"; however, the appellants and respondent sponsors dispute whether or not an actual and substantial injury will result if I-1366 is placed on the ballot. *Rabon*, 135 Wn.2d at 285. As such, were this court to definitively determine the fundamental purpose of the initiative and whether that purpose is outside the scope of the people's initiative power, it "'would be the equivalent of a decision on the merits, a task for which this court is ill suited.'" *Kucera*, 140 Wn.2d at 217 (quoting *Fed. Way Family Physicians, Inc. v. Tacoma Stands Up for Life*, 106 Wn.2d 261, 267, 721 P.2d 946 (1986)).

12

initiative implicates the First Amendment to the United States Constitution or article I, section 5 of our constitution, and we express no opinion on that matter.

Although we conclude that appellants have taxpayer standing and that this case is justiciable, appellants have not met their threshold burden of showing a clear legal or equitable right that would support the granting of injunctive relief. The trial court therefore did not abuse its discretion in denying appellants' motion for a preliminary injunction. We affirm.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 92075-3

Madsen, C.J.

WE CONCUR:

_____    _____
                              Wiggins, J.

_____    _____
                              González, J.

Fairhurst. J.              Gordon McCloud, J.

_____    _____
Stephens, J.

14