IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| ERIC HOOD, | ) | No. 38187-1-III |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | OPINION PUBLISHED IN PART |
| | ) | |
| COLUMBIA COUNTY, | ) | |
| | ) | |
| Respondent. | ) | |

LAWRENCE-BERREY, J. — We granted discretionary review of a trial court's order compelling discovery. The order requires Eric Hood to answer questions and produce documents pertaining to his litigation history involving the Public Records Act (PRA), chapter 42.56 RCW. Columbia County (County) argues Mr. Hood is a disingenuous PRA litigator motivated by profit, not by a true desire to obtain records, and this motive is an appropriate factor for trial courts to consider when imposing a per diem penalty.

We are sympathetic to the County's argument. But the proper focus for setting penalties is on the agency's conduct or motivation, not the requestor's. Also, the 2011 legislature was aware of the so-called problem of disingenuous PRA litigants. It declined to amend the PRA to make it more difficult for disingenuous PRA litigants to recover penalties. Instead, it amended the PRA to make it more difficult for *incarcerated* PRA litigants to recover penalties. We reverse the trial court's discovery order.

No. 38187-1-III
*Hood v. Columbia County*

FACTS

On January 20, 2019, Eric Hood sent the Columbia County auditor the following e-mail: "'I heard the county was recently audited by the state auditor. May I have all records the county got from the auditor and all records of the county's response to the audit or to the audit report?'" Clerk's Papers (CP) at 2.[1]

The same day, the auditor e-mailed Mr. Hood: "'Please find attached a copy of the recently completed 2017 Accountability and Financial/Federal Audit Reports performed by the Washington State Auditor's Office. The County's responses to the State Auditor are included within these reports.'" CP at 2. Mr. Hood responded: "'I received them, though I haven't had a chance to look at them yet. Thank you for your quick reply. Will you be sending anything else or is that it?'" CP at 2. The auditor responded, "'This is everything that was reported to us from the State Auditor and our responses are included within. So unless I receive another request from you for something else, this is all I have.'" CP at 2.

---

[1] The e-mails between Mr. Hood and the County are not in the record. However, we cite the complaint because the parties do not dispute the contents of the e-mails.

Just under one year later, Mr. Hood filed a complaint for violations of the PRA. The County filed an answer asserting all responsive documents had been provided and denying that Mr. Hood was entitled to any relief.

Mr. Hood sent the County interrogatories and requests for production. This led to a CR 26(i) conference. The County indicated it was unclear what Mr. Hood meant in his discovery and original PRA request and noted that the discovery questions and PRA request were substantially similar. Mr. Hood's attorney responded by listing the missing items his client believed were requested in his discovery. The list included:

1. Entrance documents. Which typically outlines what will be audited.
2. Exit documents. Which typically state findings and recommendations.
3. Response to the exit documents, which is self-explanatory.
[4]. A management letter which typically follows an audit.
[5]. Emails scheduling a place and time for the audit.

CP at 74.

The County suspected that Mr. Hood was a disingenuous PRA litigator. It sent discovery designed to establish that Mr. Hood's motive for making his public records request was financial gain, not a true desire to obtain records. The interrogatories asked:

> INTERROGATORY NO. 3: Have you ever been party to any legal proceedings in the past, whether civil or criminal? If so, please state that nature of the proceeding and the date, court, place, and cause number of each action.
> . . . .

3

INTERROGATORY NO. 4:  For each legal proceeding named in Interrogatory No. 3 relating to alleged violations of the Public Records Act, in which you were a plaintiff, please provide the following information:

A.      The outcome or resolution of the case (i.e. trial, dismissal on summary judgment, settlement, etc.).

B.      The identity of the substantially prevailing party.

C.      The amount of money the case was settled for.

D.      Any non-monetary relief awarded.

E.      The requests made under the Public Records Act.

F.      Any settlement offers made by Plaintiff or Plaintiff's representative.

. . . .

INTERROGATORY NO. 5:  For all public records lawsuits identified in Interrogatory No. 4, please identify which cases involve or involved an allegation that the public entity failed to seek clarification.

. . . .

INTERROGATORY NO. 6:  For all public record lawsuits identified in Interrogatory No. 4, please identify which cases involve or involved an allegation that the public entity withheld records without claiming an exemption under the Public Records Act.

. . . .

INTERROGATORY NO. 7:  Identify all public records lawsuits where you or your legal representative offered to withdraw the records request as part of any settlement offer or offers made.

. . . .

INTERROGATORY NO. 8:  For all lawsuits where you proposed to withdraw your public records request as part of your settlement offer, please explain whether you ever received the requested records.

. . . .

INTERROGATORY NO. 11:  Please identify each and every Washington county, city, district, or other governmental body or agency to which you have submitted the same or similar public records request for audit records as the request you sent to Columbia County.

CP at 43-46.

4

In its first request for production, the County requested Mr. Hood to produce "full and accurate copies of your requests to all public entities identified in Interrogatory No. 4, including any and all correspondence with employees or agents of those public entities." CP at 52. In its second request for production, the County requested "copies of all settlement offers you have made in past and current litigation under the Washington State Public Records Act RCW 42.56. et seq." CP at 52.

Mr. Hood objected to the discovery. He cited *City of Lakewood v. Koenig*, 160 Wn. App. 883, 250 P.3d 113 (2011), which suggests that discovery seeking a record requestor's PRA litigation history is irrelevant. Following a CR 26(i) conference, the County e-mailed Mr. Hood's attorney: "It is unfortunate we will have to move forward with a formal hearing on our discovery requests regarding Mr. Hood's apparent disingenuous use of the PRA for personal gain." CP at 320.

The County moved to compel discovery responses and impose sanctions under CR 37. The County's memorandum in support explained the questions the discovery sought to answer:

> 1) whether [Mr. Hood] is using the same or similar requests in his lawsuits; 2) whether [Mr. Hood] waits [to file his lawsuit] until just before the [one-year period of limitations] to maximize civil penalties; 3) whether [Mr. Hood] has obtained hundreds of thousands of dollars in PRA litigation settlements; 4) whether [Mr. Hood] offers to withdraw his requests in

exchange for money prior to receiving all alleged responsive records; and
5) whether [Mr. Hood] refuses to clarify his requests.

CP at 66.

At the motion hearing, the County argued that the legislature implicitly overruled

*Koenig* when it amended the PRA to allow trial courts to award a per diem penalty as low

as zero dollars. It argued that in cases such as the one before it—where PRA litigants are

motivated by pecuniary gain rather than a true desire to obtain records—the minimum

penalty is appropriate. Based on this argument, the trial court concluded that the

discovery sought was appropriate. It entered an order compelling Mr. Hood to answer the

discovery, but declined to award the County attorney fee sanctions.

Mr. Hood moved for discretionary review and to stay the trial court's discovery

order. A commissioner of this court granted Mr. Hood's requests.

## ANALYSIS

Mr. Hood argues that his motive for filing his PRA request is not relevant, and the

trial court abused its discretion by allowing discovery into his PRA litigation history. We

agree.

A party may obtain discovery on any matter, not privileged, that is relevant to the

subject matter of the pending action. CR 26(b)(1). The requested discovery must be

reasonably calculated to lead to the discovery of admissible evidence. *Id.* A party, upon

reasonable notice to other parties and upon a showing of compliance with CR 26(i), may apply for an order compelling discovery. CR 37(a). The decision to grant or deny a motion to compel discovery is subject to the discretion of the trial court. *Neigh. Alliance of Spokane County v. Spokane County*, 172 Wn.2d 702, 747, 261 P.3d 119 (2011). A trial court abuses its discretion when its decision is based on an erroneous view of the law. *Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 122 Wn.2d 299, 339, 858 P.2d 1054 (1993).

The parties focus extensively on *Koenig*. We begin our analysis with that case.

KOENIG V. CITY OF LAKEWOOD

In *Koenig*, we were asked to decide whether the City of Lakewood (City) was entitled to discovery into Koenig's litigation history. 160 Wn. App. 883. There, after providing Koenig with redacted records, the City sought a declaratory judgment that it had fully satisfied the PRA request. *Id.* at 886. The City then sent Koenig discovery requests into his litigation history and copies of any favorable settlements or judgments. *Id.* at 886-87. Koenig moved for a protective order. *Id.* at 888. The City argued to the trial court that the information it sought was important for the penalty phase of the PRA litigation because it would show that Koenig was motivated by profit, not a true desire to obtain public documents. *Id.* Koenig responded that the discovery requested would not

lead to admissible material. *Id.* The trial court ruled that the discovery was appropriate because it could lead to admissible evidence of potential economic loss. *Id.* We reversed, concluding that Koenig's litigation history would not demonstrate his economic loss or the lack thereof. *Id.* at 893.

We also addressed the City's argument that the discovery would show Koenig's history of bad faith delay in filing PRA litigation to maximize his penalty award. *Id.* at 894. We concluded that Koenig's delay in filing prior PRA lawsuits was not relevant to setting the penalty in the case because the City sued and thus forced Koenig into its own time schedule. *Id.* Despite the parties' claims below and on appeal, *Koenig* does not hold that a PRA litigant's motive for seeking profit is irrelevant. We simply did not reach that question.

THE 2011 AMENDMENT TO RCW 42.56.550(4)

The parties also focus on the 2011 amendment to RCW 42.56.550(4) and whether that amendment permits trial courts to consider the PRA litigant's profit motive when assessing a per diem penalty.

Former RCW 42.56.550(4) (2006) provided: "[I]t shall be within the discretion of the court to award [a prevailing PRA requestor] an amount not less than five dollars and not to exceed one hundred dollars for each day that he or she was denied the right to

inspect or copy said public record." In 2011, the legislature reduced the minimum per diem penalty from five dollars to zero dollars. *See* LAWS OF 2011, ch. 273, § 1 (effective July 22, 2011).

The County argues that the legislative intent of this amendment is to permit courts to award zero-dollar penalties where requestors engage in disingenuous use of the PRA for profit. It quotes from the following section of Senate Bill Report 1899:

> **Staff Summary of Public Testimony on Substitute House Bill:** PRO: While the approaches of the other PRA bills this session were different and each had merit, this bill is a good compromise. *It addresses the disingenuous use of the PRA for personal gain, allowing the court to impose no penalties in appropriate circumstances.* The requirement that the judge must assess a minimum of $5 for each day works a disproportionate hardship on small jurisdictions, especially considering how long the legal process takes.

S.B. REP. ON H.B. 1899, 62d Leg., Reg. Sess. (Wash. 2011) (emphasis added); CP at 59.

The County admits that the report cannot be cited as evidence of legislative intent. Importantly, the language quoted above is found in the staff summary of public testimony and the first page of that report states: "*This analysis was prepared by non-partisan legislative staff for the use of legislative members in their deliberations. This analysis is not part of the legislation nor does it constitute a statement of legislative intent*." CP at 58 (underlining added).

Neither party presents this court with admissible evidence of legislative intent for the 2011 amendment. Instead, the County contends the elimination of the mandatory minimum *is* legislative intent in response to *Koenig*. Citing *Glass v. Stahl Specialty Co.*, 97 Wn.2d 880, 887, 652 P.2d 948 (1982), the County argues, when construing legislation, this court presumes the legislature is familiar with past judicial interpretations of enactments. We agree with this general proposition, but it does not support the County's position.

First, the bill history for HB 1899 shows that the amendment was drafted and sent to committees in February and March 2011. *See* Br. of Appellant, App. C. *Koenig* was decided on March 29, 2011. These dates refute the County's argument that the legislation was in response to *Koenig*.

Second, past judicial interpretations of the PRA penalty statute resulted in a list of factors for trial courts to consider when setting a per diem penalty. *Yousoufian v. Office of Ron Sims*, 168 Wn.2d 444, 467-68, 229 P.3d 735 (2010). We presume the 2011

legislature was aware of the *Yousoufian* factors[2] when it amended the statute.  It could have made it more difficult for disingenuous PRA litigators to recover penalties, but it did not.  Nothing in the 2011 amendments supports the County's position that the legislature sought to deter disingenuous PRA litigants from recovering penalties.  The trial court abused its discretion when it reached the contrary legal conclusion.

Nevertheless, we may affirm a trial court's decision on any basis supported by the record and the briefing.  *Huff v. Wyman*, 184 Wn.2d 643, 648, 361 P.3d 727 (2015).  In its

---

[2]  Mitigating factors that may decrease the penalty are: "(1) a lack of clarity in the PRA request; (2) the agency's prompt response or legitimate follow-up inquiry for clarification; (3) the agency's good faith, honest, timely, and strict compliance with all PRA procedural requirements and exceptions; (4) proper training and supervision of the agency's personnel; (5) the reasonableness of any explanation for noncompliance by the agency; (6) the helpfulness of the agency to the requestor; and (7) the existence of agency systems to track and retrieve public records." *Yousoufian v. Office of Ron Sims*, 168 Wn.2d 444, 467, 229 P.3d 735 (2010) (footnotes omitted).

Conversely, aggravating factors that may increase the penalty are: "(1) a delayed response by the agency, especially in circumstances making time of the essence; (2) lack of strict compliance by the agency with all the PRA procedural requirements and exceptions; (3) lack of proper training and supervision of the agency's personnel; (4) unreasonableness of any explanation for noncompliance by the agency; (5) negligent, reckless, wanton, bad faith, or intentional noncompliance with the PRA by the agency; (6) agency dishonesty; (7) the public importance of the issue to which the request is related, where the importance was foreseeable to the agency; (8) any actual personal economic loss to the requestor resulting from the agency's misconduct, where the loss was foreseeable to the agency; and (9) a penalty amount necessary to deter future misconduct by the agency considering the size of the agency and the facts of the case." *Id.* at 467-68 (footnotes omitted).

briefing, the County proposes multiple bases for affirming the trial court. In the published portion of this opinion, we address the County's strongest argument.

ARE THE INTERESTS OF THE PRA SERVED BY PERMITTING TRIAL COURTS TO REDUCE THE PER DIEM PENALTY FOR PROFIT-SEEKING PRA LITIGANTS?

The County argues "[t]he interests of the [PRA] are best served by discouraging disingenuous requests and 'gotcha' litigation." Br. of Resp't at 35. It asserts that its discovery seeks information to show that Mr. Hood, a serial requestor, has no interest in obtaining public records, but instead is using the PRA to obtain nuisance settlements from agencies who would rather pay $10,000 than incur the expense of litigation, possible penalties, and attorney fees. The County argues that reducing penalty awards to dissuade PRA abuse is consistent with the purpose of the PRA. In support of its argument, the County cites *Hobbs v. Washington State Auditor's Office*, 183 Wn. App. 925, 335 P.3d 1004 (2014). There, we recognized that "the purpose of the PRA is best served by communication between agencies and requesters, not by playing 'gotcha' with litigation." *Id.* at 941 n.12.

But our Supreme Court has never recognized the relevance of a PRA requestor's motivation in setting per diem penalties. Quite the opposite, it is the *agency's* motivation that is relevant because "agency culpability [is] the focus in determining daily penalties . . . ." *Neigh. Alliance*, 172 Wn.2d at 717.

12

We are sympathetic to the County's argument. But if the law is to change, the legislature, not the judiciary, must change it. The staff summary of SBH 1899 makes clear the legislature was aware of "disingenuous" PRA litigants. Yet it did not address disingenuous PRA litigants in the amendment. Rather, it added a new section making it more difficult for *incarcerated* PRA litigants to obtain penalty awards. *See* Former RCW 42.56.565 (2009), *amended by* LAWS OF 2011, ch. 300, § 1. Thus, although the legislature had the opportunity to change the law in the manner requested by the County, it chose to focus on incarcerated PRA litigants only. We will not "fix" what the legislature's inaction implies is not broken.[3]

Reversed and remanded.

---

[3] In its brief, the County suggests that some of the discovery it seeks could lead to admissible evidence with respect to the *Yousoufian* factors. We note that most of these factors focus on evidence within the control of the agency, not the requestor. But the first and fifth *Yousoufian* mitigating factors—lack of clarity in the PRA request and the reasonableness of the agency's excuse for noncompliance—are different.

A party may be able to frame discovery into how other agencies answered a requestor's PRA request that would be reasonably calculated to lead to admissible evidence: evidence that other agencies struggled to understand the requestor's PRA request. Our decision today does not foreclose the County from refining its discovery requests to obtain such information.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder, having no precedential value, shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

THE REQUEST WAS SUFFICIENTLY IDENTIFIABLE

The County argues the discovery it seeks will show that Mr. Hood did not make a sufficiently identifiable records request for liability to be imposed on it. We disagree.

The PRA does not "require public agencies to be mind readers. A public agency cannot be expected to disclose records that have not yet been requested. To hold otherwise would place public agencies in an untenable position." *Bonomy v. City of Seattle*, 92 Wn. App. 403, 409, 960 P.2d 447 (1998). "[T]his requirement of identification is satisfied when there is 'a reasonable description enabling the government employee to locate the requested records.'" *Id.* at 410 (quoting *Bristol-Myers Co. v. Fed. Trade Comm'n*, 424 F.2d 935, 938 (D.C. Cir. 1970)).

Mr. Hood's PRA litigation history will not lead to admissible evidence of whether his PRA request was "identifiable." Mr. Hood asked for "all records the county got from the auditor and all records of the county's response to the audit or to the audit report." CP at 2. Mr. Hood's request encompassed "all records" from the auditor, it was not

14

limited to the audit report. Discovery into Mr. Hood's PRA litigation history will not change this fact.

MR. HOOD HAS STANDING EVEN IF HE WAS NOT GENUINELY SEEKING
PUBLIC RECORDS

The County next argues that the discovery it seeks will show that Mr. Hood lacks standing because he was not genuinely seeking public records. We disagree with the County's analysis of standing.

"'The doctrine of standing requires that a claimant must have a *personal stake in the outcome of a case* in order to bring suit.'" *Germeau v. Mason County*, 166 Wn. App. 789, 803, 271 P.3d 932 (2012) (quoting *Kleven v. City of Des Moines*, 111 Wn. App. 284, 290, 44 P.3d 887 (2002)). Here, Mr. Hood made a request for public records from the County, he asserts the County did not fully respond, and he seeks per diem penalties. Mr. Hood stands to gain if he prevails. Because he has a personal stake in the litigation, he has standing to bring this action.

ATTORNEY FEES

Mr. Hood, citing RCW 42.56.550(4), requests attorney fees on appeal. That subsection provides in pertinent part:

No. 38187-1-III
*Hood v. Columbia County*

Any person who prevails against an agency in any action in the courts seeking the right to inspect or copy any public record or the right to receive a response to a public record request within a reasonable amount of time shall be awarded all costs, including reasonable attorney fees, incurred in connection with such legal action.

Here, Mr. Hood has not prevailed in anything other than a discovery dispute. An award of reasonable attorney fees would be premature. We deny his request.

Lawrence-Berrey, J.

WE CONCUR:

Siddoway, A.C.J.

Fearing, J.

16