

**FILE**

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE  DEC 0 6 2018

Fairhurst, CJ
CHIEF JUSTICE

This opinion was filed for record

at 8:00 a.m. on Dec 6, 2018

SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| PROTECT PUBLIC HEALTH and CITY OF SEATTLE, | ) ) ) | No. 95134-9 |
| Respondents, | ) ) | |
| v. | ) | En Banc |
| JOSHUA FREED and IMPACTION, | ) ) ) | |
| Appellants, | ) ) ) | |
| CITIZENS FOR A SAFE KING COUNTY, KING COUNTY, and JULIE WISE, in her official capacity, | ) ) ) ) | |
| Defendants. | ) ) | Filed    DEC 0 6 2018 |

JOHNSON, J.—This case involves the issue of whether a proposed initiative is beyond the scope of the local initiative power. Proposed Initiative 27 (I-27) would allow King County voters to decide whether to ban public funding for community health engagement location (CHEL) sites, colloquially known as safe injection sites, and to create civil liability for any person or entity who operates a

site. King County Superior Court granted respondent Protect Public Health's (PPH) motion for declaratory judgment and injunctive relief and enjoined King County from placing I-27 on the ballot. The court reasoned, under preelection review, I-27 is outside the scope of local initiative power because it impinges on the legislative authority of King County and the King County Board of Health. Initiative sponsor IMPACtion appealed directly to this court.

We affirm the superior court and hold that I-27 is outside the scope of local initiative power because it improperly interferes with the budgetary authority of the King County Council (Council). Therefore, the superior court properly enjoined I-27 from the King County ballot.

## FACTS AND PROCEDURAL HISTORY

All parties agree that in recent years, heroin and prescription opioid addiction has become a public health crisis. To help combat this crisis, in March 2016, Seattle and King County elected officials convened the Heroin and Prescription Opioid Addiction Task Force (Task Force) to identify strategies and recommendations to improve access to treatment and services. After months of research and a series of community meetings to obtain public comment, the Task Force made eight recommendations, one of which was for the county to establish CHEL sites. CHEL sites would provide opioid users with a place to safely use

drugs, access to medical professionals who can administer naloxone to help reverse overdoses, a needle exchange program, and a way to connect to services and treatment. The Task Force recommended a pilot program for the CHEL sites, which includes operating two initial sites (one in Seattle, one in another area of King County) on a three-year provisional basis. The CHEL sites would be continued if the evidence indicated positive outcomes.

On January 19, 2017, the Board of Health unanimously voted to pass Resolution 17-01, which endorsed the Task Force's recommendations and called upon city, county, and state actors to implement public health policies consistent with the recommendations, including the CHEL site pilot program.

In response, IMPACtion, led by Joshua Freed (collectively IMPACtion), initiated the local initiative process to allow for King County voters to vote on the issue of CHEL sites. On April 14, 2017, IMPACtion filed the initiative with the clerk of the Council, who assigned the initiative the number "I-27." After the King County prosecuting attorney submitted the ballot title and the clerk of the Council approved the form of the initiative petitions, IMPACtion collected in excess of 69,000 voter signatures.

I-27 would prohibit the use of public funds for "registration, licensing, construction, acquisition, transfer, authorization, use, or operation of a supervised drug consumption site"; prohibit anyone from operating or maintaining any building that is used as a supervised consumption site; and impose civil liability on anyone who violates the initiative. Clerk's Papers (CP) at 631. I-27 would not directly invalidate any other Task Force recommendations, including increased public and prescriber education about opioids and their possible adverse effects, promotion of secure opioid medication returns and safe storage, enhanced screening for opioid use disorders in schools and health care facilities, increased and enhanced treatment options, innovative prescribing of medications that help treat opioid addiction, and expanded access to naloxone within the county.

On June 28, 2017, the Council enacted Ordinance 18544, which appropriated $2,127,000 to implement the Task Force's recommendations. The ordinance also specifically prohibits the use of funds for the pilot CHEL sites in any city that does not elect to allow a CHEL site.

On August 19, 2017, public health professionals and community members formed the nonprofit corporation PPH to combat I-27 and defend "evidence-based public health decisions from interference from the local initiative and referendum process." CP at 343. Two days later, PPH filed a complaint for declaratory

judgment and injunctive relief in King County Superior Court, seeking preelection review of I-27 and asking the court to enjoin King County from placing I-27 on the ballot, arguing it is outside the scope of the local initiative power.[1]

The superior court engaged in preelection review and held that I-27 is beyond the scope of the local initiative power because it interferes with the duties and obligations of the Board of Health and Council and the local legislative authority to budget. IMPACtion appealed directly to this court. We retained this case for hearing and decision.

## ISSUE

Whether the trial court properly determined I-27 is outside the scope of the local initiative power and enjoined it from the ballot.

## ANALYSIS

Whether an initiative is beyond the scope of local initiative power is a question of law that we review de novo. *City of Port Angeles v. Our Water—Our Choice!*, 170 Wn.2d 1, 7, 239 P.3d 589 (2010).

Generally this court disfavors judicial preelection review; however, we have acknowledged narrow exceptions to this general prohibition. *Coppernoll v. Reed,*

---

[1] On September 22, 2017, the city of Seattle (City) filed a motion to intervene, which the superior court granted on October 2, 2017. The City also filed a separate complaint for declaratory judgment and injunctive relief to enjoin I-27 from the ballot, but the superior court did not separately rule on its complaint, as the City sought the same relief as PPH.

155 Wn.2d 290, 297, 119 P.3d 318 (2005). One such exception involves determining whether the "proposed law is beyond the scope of the initiative power." *Seattle Bldg. & Constr. Trades Council v. City of Seattle*, 94 Wn.2d 740, 746, 620 P.2d 82 (1980).

When engaging in preelection review, *statewide* initiatives are subject to the scope of the *state* legislative power, whereas *local* initiatives are subject to the scope of the *local* legislative power. *See Coppernoll*, 155 Wn.2d at 301. These powers are not equivalent. The people's right to statewide initiative is established and set forth in the 7th Amendment to the Washington State Constitution. *Our Water—Our Choice!*, 170 Wn.2d at 7-8 (citing CONST. art. II, § 1). As a constitutional right, courts interpret this power broadly to favor the initiative right of the people. *Coppernoll*, 155 Wn.2d at 297.

In contrast, the scope of the local initiative power is governed by statutes and county charters, and preelection challenges are subject to a different analysis. *See Our Water—Our Choice!*, 170 Wn.2d at 8; CONST. art. XI, § 4 (allowing counties to create a "Home Rule" charter for self-governance, subject to the constitution and laws of the state). In addition to any home rule charter limits, this court has recognized "multiple limits on the local initiative power." *Spokane Entrepreneurial Ctr. v. Spokane Moves to Amend Constitution*, 185 Wn.2d 97, 107,

369 P.3d 140 (2016). The most relevant limit in this case is that a local "initiative is beyond the scope of the initiative power if the initiative involves powers granted by the legislature to the governing body of a city, rather than the city itself." *City of Sequim v. Malkasian*, 157 Wn.2d 251, 261, 138 P.3d 943 (2006). We have recognized that a municipality's governing body, or "'legislative authority,'"[2] includes the mayor and the city council, but *not* the electorate. *Malkasian*, 157 Wn.2d at 265.

In *Malkasian*, we examined a statutory scheme that specifically delegated to the legislative authority of a city authority over revenue bonds. The proposed initiative in question would have imposed additional requirements on revenue bonds issued by the city. We held that because the statutory scheme specifically granted authorization over revenue bonds to the city council, an initiative that interferes with this specific statutory delegation of authority is beyond the scope of the local initiative power. *Malkasian*, 157 Wn.2d at 265. We have applied this same rule to the county council of home rule charter counties, like King County. *See Snohomish County v. Anderson*, 123 Wn.2d 151, 868 P.2d 116 (1994) (holding

---

[2] We have used "governing body," "legislative body," and "legislative authority" interchangeably. *Malkasian*, 157 Wn.2d at 265. We predominantly use "legislative authority" in this opinion as that is the phrase used in our constitutional provision allowing home rule charter counties. CONST. art. XI, § 4.

that statutory delegation to county legislative authority under RCW 36.70A.210(2) to adopt countywide planning policy is not subject to local referendum power).

As home rule charters are subject to the laws of the State of Washington, the charter initiative process cannot allow for an initiative that impinges on legislative delegation of authority. Chapter 36.40 RCW establishes the limits on statutory delegation regarding county budgets and grants the legislative authority to county councils to "fix and determine each item of the budget" and to enact biennial, supplemental, and emergency budgets. RCW 36.40.080, .250. Specifically, under RCW 70.12.025, "[e]ach county legislative authority shall annually budget and appropriate a sum for *public health work*." (Emphasis added.) This statutory delegation limits the scope of the local initiative power.

I-27 is separated into four sections that would amend the King County Code (KCC). Section 1 would add a new section to chapter 4A.650 KCC, prohibiting the use of public funds for "registration, licensing, construction, acquisition, transfer, authorization, use, or operation of a supervised drug consumption site." CP at 631. The proposed section also defines a supervised consumption site and would allow for "[a]ny person or class of persons to commence a civil action . . . against the county" if it violates the section. CP at 632.

8

Section 2 would add a new section to chapter 12.81 KCC (controlled substances). This section would make it "unlawful for any person to operate or maintain any building, structure, site, facility or program" that provides space for supervised drug consumption. CP at 632. It goes on to again allow for any person or class of persons to commence a civil action against any person who violates the section, and defines "person" as "any individual, firm, association, organization, partnership, corporation, or any other entity," including "King County and any city, board of health, health department, municipal corporation, and any other political or civil subdivision." CP at 632.

Section 3 would amend KCC 12.81.040, which currently criminalizes all of chapter 12.81 KCC, to continue criminalizing violations of sections 12.81.010-.030, but not any other provisions of the chapter. This would exempt the new section discussed in section 2 from criminal liability[3] as it would be added after .040.

Section 4 is a severability clause that indicates if any portion is found to be invalid, it does not affect the rest of the proposed initiative.

---

[3] In its findings of fact, the trial court found that section 2 creates civil *and criminal* liability for anyone who operates a CHEL site. CP at 692. Upon closer inspection of section 2, read in conjunction with section 3, it appears that it would create only civil liability while maintaining criminal liability for other sections within chapter 12.81 KCC. IMPACtion does not challenge this finding of fact on appeal. *See* Statement of Grounds for Direct Review; Br. of Appellants.

IMPACtion portrays I-27 as "essentially a binary public policy decision – heroin injection sites: yes or no." Br. of Appellants at 1. However, the text of I-27 is more comprehensive and complicated than a simple yes or no public policy question. This "all or nothing" argument is also undercut because I-27 does not seek to modify any other aspect of the CHEL sites except the ability to safely inject and use heroin and other opioids. Appellants do not raise any issue with respect to the access to naloxone, access to treatment and services, or the needle exchange as part of the CHEL sites. Thus, section 1 acts as a partial "rollback" of funds specifically appropriated to the "injection" portion of CHEL sites and does not specify how the remaining portion of the appropriations would be affected, if at all. Considering the only ordinance enacted was the appropriation ordinance, if enacted I-27 would arguably invalidate this appropriation.

IMPACtion argues that in determining scope, this court must look at the "'fundamental and overriding purpose'" of an initiative and not get lost in the minutiae. Br. of Appellants at 22 (quoting *Huff v. Wyman*, 184 Wn.2d 643, 652, 361 P.3d 727 (2015)). However, the budgetary restrictions of I-27 are not "minutiae." One of the five key points of I-27 is to "[p]rotect[] taxpayers by prohibiting public financing of drug consumption sites." Br. of Appellants, App. (King County Initiative 27: Keep Our Communities Safe). *Huff*, primarily relied on

10

by IMPACtion, concerned a statewide initiative, which, as indicated above, has different rules regarding scope and gives more deference to inclusion of an initiative on the ballot. 184 Wn.2d at 646. Because of this, *Huff* provides little guidance in the review of the scope of the local initiative power.

The Council passed Ordinance 18544 amending the 2017-2018 biennial budget appropriations. Within the expenditure restrictions of the amended appropriations, the ordinance directs that over $2,000,000 be used to implement the Task Force public health recommendations, with another expenditure restriction indicating that no money could be expended to establish a CHEL site in a city that did not want one. Because this indicates how and where money is to be spent, I-27's aim is directly at the budget appropriation. Viewed in context, the ultimate goal of I-27 is to eliminate the funding for CHEL sites. While we do not question whether a different initiative could be used to set policy concerning CHEL sites, the ability to set the budget and appropriate money to public health work is a specific delegation by the legislature to the county's legislative authority. Therefore, the ordinance is not subject to initiative under *Malkasian*.

IMPACtion argues because the Council enacted the clause indicating that funds would not be expended to build CHEL sites within cities that did not opt in, this was not merely a budgetary ordinance but created policy. Br. of Appellants at

11

17. This argument is unpersuasive. A "budget" is "a plan for the coordination of resources (as of money or manpower) and expenditures." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 290 (2002). The clause specifically references an expenditure restriction, that funds cannot be used for a stated purpose, which would certainly be part of a plan for the coordination of resources. The opt-in clause is budgetary.

The Council has authority delegated by statute to allocate spending within the budget. A proposed modification of an enacted appropriation ordinance would act as an invalidation of that enacted ordinance. Directing the county how it may use its money, as section 1 does, expressly negates the portion of the budgetary ordinance that establishes funding for *all* of the Task Force's recommendations, including CHEL sites. Therefore, the proposed budgetary restrictions improperly interfere with the legislative authority of the Council to set budgets and appropriate money for public health work.[4] We agree with the trial court's holding that the prohibition on funding falls outside the scope of the local initiative power.

---

[4] Although portrayed as an initiative, I-27 would take effect after the Council has already passed the ordinance appropriating the money. Therefore, I-27's prohibition on the use of public funds is effectively acting as a referendum to modify the Council's ordinance. This is problematic under the King County Charter. *See* KING COUNTY CHARTER § 230.40 ("[a]n appropriation ordinance . . . shall not be subject to a referendum").

CONCLUSION

We affirm the superior court. I-27 improperly interferes with the budgetary authority of the Council. Therefore, I-27 is outside the scope of the local initiative power, and the superior court properly enjoined it from the ballot.

WE CONCUR: