# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| BURIEN COMMUNITIES FOR INCLUSION, a Washington political committee, | No. 77500-6-I |
| Respondent, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| RESPECT WASHINGTON, a Washington political committee, . | |
| Appellant, | |
| KING COUNTY ELECTIONS; JULIE WISE, King County Director of Elections, in her official capacity at King County Elections; and CITY OF BURIEN, | |
| Defendants. | FILED: September 9, 2019 |

APPELWICK, C.J. — On September 14, 2017, the trial court granted Burien Communities for Inclusion (BCI) a preliminary injunction, prohibiting Burien Initiative 1 (Measure 1) from being placed on the November 2017 ballot. Respect Washington appeals the preliminary injunction, arguing that (1) it violates the free speech rights of the city of Burien's (City) voters, (2) the trial court erred in altering the status quo, and (3) BCI failed to show substantial injury. It also contends that Measure 1 is within the scope of the City's initiative power. We affirm.

FACTS

On January 9, 2017, the Burien City Council passed Ordinance 651 (Ordinance). The Ordinance is now codified at Burien Municipal Code (BMC) 2.26.010-.030. BMC 2.26.020 provides that "a City office, department, employee, agency or agent shall not condition the provision of City services on the citizenship or immigration status of any individual," except as otherwise required by law. It prohibits City personnel from initiating any inquiry or enforcement action based solely on a person's civil immigration status, race, inability to speak English, or inability to understand City personnel or officers. BMC 2.26.020(4) And, it forbids City officials from creating a registry for the purpose of classifying people on the basis of religious affiliation, or conducting a study related to the collection of such information. BMC 2.26.030.

On July 7, 2017, Craig Keller, the campaign manager, treasurer, and officer of Respect Washington, a Washington political committee submitted an initiative petition to the City. The petition asked that an initiative repealing the Ordinance, Measure 1,[1] be submitted to a vote of the City's registered voters. In addition to repealing the Ordinance, Measure 1 would add the following chapter to the BMC:

> New Chapter 9.20 is hereby added to the Burien Municipal Code "Public Peace, Morals and Welfare" to read as follows:
> 9.20 Citizen Protection of Effective Law Enforcement: The City of Burien shall not regulate the acquisition of immigration status or religious affiliation unless such regulation is approved by a majority vote of the City Council and a majority vote of the people at a municipal general election.

---

[1] Both parties refer to this initiative as "Measure 1."

Two weeks later, the King County Department of Elections found that a sufficient number of signatures had been submitted for Measure 1, and issued a certificate of sufficiency. The Burien City Council then voted to place Measure 1 on the November 7, 2017 ballot.

On September 8, 2017, Burien Communities for Inclusion (BCI), a Washington political committee, filed a complaint for declaratory and injunctive relief against Respect Washington, King County Elections, King County Director of Elections Julie Wise, and the City. It sought a declaratory judgment that Measure 1 is invalid, arguing in part that (1) it exceeds the scope of the City's initiative power, and (2) the petition used to gather signatures violates RCW 35.21.005. It also asked the trial court to enjoin Measure 1 from being included on the November 2017 ballot.

Three days later, BCI sought and obtained a temporary restraining order (TRO). The TRO prohibited King County Elections and Wise from placing Measure 1 on the November 7, 2017 ballot. As a result, King County removed Measure 1 from the ballot. In granting the TRO, the trial court ordered that, on September 13, the matter be heard on a motion for a preliminary injunction, at which time the TRO would expire.[2] The deadline for King County Elections to send the ballots to the printer was the next day, September 14.

---

[2] On September 12, 2017, BCI filed a motion for a preliminary injunction, asking the trial court to enjoin King County Elections and Wise from including Measure 1 on the ballot.

On September 14, 2017, the trial court granted BCI's motion for a preliminary injunction. In doing so, it ordered the following:

1. City of Burien Initiative Measure No. 1 ("Measure 1") is invalid on the grounds that (a) Measure 1 exceeds the scope of the initiative authority granted to the people of the City of Burien, that it is administrative in nature, and (b) the petition used to gather signatures for Measure 1 violated RCW 35.21.005 by deviating from the requirements for the contents and form of a petition, as set forth in RCW 35.17.240 through 35.17.360;
2. Defendants King County Elections, Julie Wise, King County Director of Elections, and all agents of King County Elections are prohibited from including or placing Measure 1 on the November 7, 2017 ballot.

Respect Washington appeals.[3]

## DISCUSSION

Respect Washington makes six arguments.[4] First, it argues that BCI is not entitled to any relief because its complaint is barred by the statute of limitations

---

[3] Respect Washington did not seek a stay of the trial court decision. Instead, on October 27, 2017, it filed a motion with this court, asking the court to treat the order as an appealable order under RAP 2.2(a)(3), or, alternatively, to grant discretionary review. On January 3, 2018, this court ordered that review would go forward as an appeal. The court explained that, despite not obtaining a declaratory judgment or permanent injunction, as a practical matter, BCI obtained the relief it requested.

[4] As an initial matter, BCI argues that all of Respect Washington's claims are moot. This case may be moot, because Measure 1 can no longer be placed on the November 2017 ballot. See Randy Reynolds & Assocs., Inc. v. Harmon, 193 Wn.2d 143, 152, 437 P.3d 677 (2019) (finding that an appeal was moot because the Court of Appeals could no longer offer effective relief). However, Respect Washington contends that Measure 1's placement on another ballot is relief that this court can provide. Even if a case becomes moot, "the court has discretion to decide an appeal if the question is of continuing and substantial public interest." Id. "Washington courts have repeatedly entertained suits involving the right of initiative or referendum despite possible mootness because the suits entail substantial public interest." Glob. Neighborhood v. Respect Wash., 7 Wn. App. 2d 354, 379, 434 P.3d 1024 (2019). Accordingly, regardless of whether Respect Washington's claims are moot, we reach the merits of this case.

and laches. Second, it argues that the preliminary injunction violated the free speech rights of the City's voters. Third, it argues that the trial court erred in granting a preliminary injunction that altered the status quo. Fourth, it argues that BCI failed to show that substantial injury would result from Measure 1's placement on the ballot. Fifth, it argues that Measure 1 does not exceed the scope of the City's initiative power, and is legislative in nature. And sixth, it argues that the petition used to gather signatures did not violate RCW 35.21.005.[5]

I.     Statute of Limitations and Laches

Respect Washington argues that BCI was not entitled to any relief because its claims were "barred by the statute of limitations or laches." It points out that the Burien City Council voted to place Measure 1 on the November 2017 ballot at a public meeting on August, 7, 2017. BCI did not file its complaint until September 8, 2017.

---

[5] Respect Washington also argues that the trial court "erred by shortening the time to respond to motions." It states that, on September 11, 2017, BCI filed its motion for a TRO, the trial court "scheduled a preliminary injunction hearing two days later," and this time frame "did not permit any party to comply with the rules governing the filing of motions." It relies on King County Local Civil Rule 7(b)(4)(a), which provides that "[t]he moving party shall serve and file all motion documents no later than six court days before the date the party wishes the motion to be considered." However, under King County Local Civil Rule 65(b)(2), a preliminary injunction hearing "shall be set in conformance with the timing requirements of CR 65(b)." Thus, Local Civil Rule 7(b)(4)(a) does not apply. Under CR 65(b), "[i]n case a [TRO] is granted without notice, the motion for a preliminary injunction shall be set down for hearing at the earliest possible time and takes precedence over all matters except older matters of the same character." And, "[n]o preliminary injunction shall be issued without notice to the adverse party." CR 65(a)(1). Respect Washington does not argue that it lacked notice of the preliminary injunction. As a result, the trial court did not err in setting a preliminary injunction hearing two days after it granted BCI a TRO.

Respect Washington asserts first that BCI brought its claims under the Uniform Declaratory Judgments Act (UDJA), chapter 7.24 RCW. Because the UDJA does not have its own statute of limitations, it states that "courts are to apply an analogous statute of limitations." Respect Washington points to three election related statutes of limitations as examples.

First, a challenge to the ballot title or summary for a state initiative or referendum must be brought within 5 days from the filing of the ballot title. RCW 29A.72.080. Second, a challenge to the ballot title for a local ballot measure must be brought within 10 days from the filing of the ballot title. RCW 29A.36.090. Third, a challenge to the Secretary of State's refusal to file an initiative or referendum petition must be brought within 10 days after the refusal. RCW 29A.72.180.

This court recently considered an identical argument in Global Neighborhood v. Respect Washington, 7 Wn. App. 2d 354, 434 P.3d 1024 (2019). There, on February 22, 2016, the Spokane City Council placed Proposition 1 on the November 2017 ballot. Id. at 369. Global Neighborhood did not file its complaint addressing the validity of Proposition 1 until May 2017, and did not move for a declaratory judgment prohibiting Proposition 1 from being placed on the ballot until July 28, 2017. Id. at 372-73. The trial court declared Proposition 1 invalid because it was administrative in nature and exceeded the local initiative power and entered an injunction directing its removal from the ballot. Id. at 374.

On appeal, Respect Washington asserted the statute of limitations as a defense, and provided this court with the same election related statutes of limitations. Id. at 380-81. This court stated that "[s]ignificant differences lie

6

between a challenge to the title of an initiative and a challenge to the substance of an initiative." Id. at 381. It explained,

> The initiative if adopted will take effect regardless of any defect in its title. If any lawsuit will remedy the flaw in the initiative's name, the lawsuit should be brought in advance of the election and in time for the secretary of state or local government official to place a proper title on the ballot. A challenge to a refusal to place an initiative on the ballot also should be brought quickly in order to remedy any wrongful refusal to consign the measure to the ballot.
>
> A challenge to a local initiative as exceeding the scope of a municipality's legislative power may be brought after the initiative election. If the challenge can be brought after the vote, we should erect no impediment by reason of a statute of limitations applying before the effectiveness of initiative as an ordinance.

Id.

As a result, it deemed the preelection challenge to a ballot initiative "analogous to a challenge to an adopted ordinance or statute." Id. In Washington, "no statute of limitations applies to a challenge to the constitutionality of a statute or other action." Id. This court held that, similarly, "no statute of limitations should apply to the challenge of an ordinance that exceeds the authority of the entity adopting the measure whether by its legislative body or the voters by initiative." Id. at 382. It also pointed out that many Washington decisions have "entertained preelection initiative challenges without suggesting a statute of limitations that applied before the election might bar such a challenge." Id. We adhere to that decision, and that find that BCI's claims were not barred by a statute of limitations.

Alternatively, Respect Washington argues that BCI's claims should have been barred by laches.

"Laches is an implied waiver arising from knowledge of existing conditions and acquiescence in them." Buell v. City of Bremerton, 80 Wn.2d 518, 522, 495 P.2d 1358 (1972). The elements of laches are: "(1) knowledge or reasonable opportunity to discover on the part of a potential plaintiff that he has a cause of action against a defendant; (2) an unreasonable delay by the plaintiff in commencing that cause of action; (3) damage to the defendant resulting from the unreasonable delay." Id. None of these elements alone raises a laches defense. Id.

Respect Washington also raised a laches defense in Global Neighborhood. 7 Wn. App. 2d at 380. There, the trial court issued its decision prohibiting Proposition 1's placement on the ballot a week before the deadline for printing ballots. Id. at 384. Respect Washington did not seek accelerated review by this court. Id. at 385. This court determined that, even if Global Neighborhood's delay in filing its complaint was unreasonable, the delay did not harm Respect Washington. Id. at 384.

This court noted that Respect Washington failed to cite authority for the proposition that a delay in appellate review constitutes harm for purposes of laches. Id. at 384-85. Its claim also "assume[d] that this court would reverse the superior court's decision and allow Proposition 1 to be submitted for a vote." Id. at 385. And, it assumed that "it had the right to vote on an initiative that exceeded the initiative power." Id. This court pointed out that, "[i]f anything, the Spokane public is prejudiced by the expense incurred by the city of Spokane in conducting a special election for an initiative beyond the scope of the initiative power." Id.

8

Last, it noted that Respect Washington assumed that "this court lacks authority to direct placement of Proposition 1 on a later ballot," and "fail[ed] to recognize the possibility of accelerated review by this court." Id.

Similarly here, Respect Washington argues that "[t]he delay until . . . the eve of printing the ballots—never before done in the context of an initiative challenge—was an unreasonable delay." Unlike Global Neighborhood, BCI sought a TRO three days before the printing deadline, sought a preliminary injunction two days before the printing deadline, and was granted a preliminary injunction on the same day as the printing deadline. Respect Washington makes the same assumptions that it did in Global Neighborhood. Its claim of harm assumes that this court would reverse the trial court's decision, and that it has the right to vote on an initiative that exceeds the initiative power. And, again, it fails to recognize the possibility of accelerated review by this court.[6]

We adhere to our decision in Global Neighborhood and find that Respect Washington was not harmed by BCI's delay in seeking a TRO and preliminary injunction.

II.  Preliminary Injunction

Respect Washington makes three arguments regarding the trial court's decision to grant a preliminary injunction.[7] It argues that the trial court (1) violated

_____

[6] In this case, Respect Washington did not seek accelerated review by this court, or a stay of the trial court's decision. Instead, on October 27, 2017, it filed a motion to determine whether the preliminary injunction was an appealable order, and, alternatively, a motion for discretionary review.

[7] Respect Washington also argues that the injunction is invalid because the trial court did not require BCI to post a bond. Under CR 65(c), "Except as otherwise provided by statute, no . . . preliminary injunction shall issue except upon the giving

the free speech rights of the City's voters, (2) improperly altered the status quo, and (3) failed to show substantial injury.

This court reviews a trial court's decision to grant a preliminary injunction and the terms of that injunction for an abuse of discretion. Resident Action Council v. Seattle Hous. Auth., 177 Wn.2d 417, 428, 327 P.3d 600 (2013). "A trial court necessarily abuses its discretion if the decision is based upon untenable grounds, or the decision is manifestly unreasonable or arbitrary." Kucera v. Dep't of Transp., 140 Wn.2d 200, 209, 995 P.2d 63 (2000).

A party seeking a preliminary injunction must show "'(1) that he has a clear legal or equitable right, (2) that he has a well-grounded fear of immediate invasion of that right, and (3) that the acts complained of are either resulting in or will result in actual and substantial injury to him.'" Tyler Pipe Industries, Inc. v. Dep't of Revenue, 96 Wn.2d 785, 792, 638 P.2d 1213 (1982) (quoting Port of Seattle v. Int'l Longshoremen's & Warehousemen's Union, 52 Wn.2d 317, 319, 324 P.2d 1099 (1958)). This listed criteria "must be examined in light of equity including balancing the relative interests of the parties and, if appropriate, the interests of the public."

---

of security by the applicant." (Emphasis added.) Respect Washington agrees that BCI brought its complaint under the UDJA. Under that Act, "The court, in its discretion and upon such conditions and with or without such bond or other security as it deems necessary and proper may . . . restrain all parties involved in order to secure the benefits and protect the rights of all parties to the court proceedings." RCW 7.24.190 (emphasis added). Accordingly, under RCW 7.24.190, no bond was required. See Yamaha Motor Corp. v. Harris, 29 Wn. App. 859, 865, 631 P.2d 423 (1981) (holding that the trial court did not err in failing to require Yamaha to post a bond where RCW 4.44.480 provides that the court may order a party to deposit money into the court "with or without security"). The trial court did not err in failing to require BCI to post a bond.

Id. If a party fails to establish any one of these requirements, "the requested relief must be denied." Kucera, 140 Wn.2d at 210.

A. Free Speech

Respect Washington argues that the preliminary injunction violates the First Amendment rights of the City's voters. Relying on Coppernoll v. Reed, 155 Wn.2d 290, 119 P.3d 318 (2005), it asserts that the State Supreme Court "has noted that there are free speech implications in even invalid initiatives."

The Coppernoll court examined the extent to which the Washington Constitution permits preelection review of a statewide initiative. Id. at 297, 299. In doing so, it explained that "[b]ecause ballot measures are often used to express popular will and to send a message to elected representatives (regardless of potential subsequent invalidation of the measure), substantive preelection review may also unduly infringe on free speech values." Id. at 298. But, it recognized that Washington courts have entertained preelection review of two types of challenges to statewide initiatives: (1) whether a ballot measure fails to comply with procedural requirements, and (2) whether a ballot measure exceeds the scope of the legislative power under article II, section 1 of the Washington Constitution. Id. at 298-99. Thus, the court recognized that some circumstances warrant preelection review.

Next, Respect Washington attempts to distinguish this case from Port of Tacoma v. Save Tacoma Water, 4 Wn. App. 2d 562, 422 P.3d 917 (2018), review denied 192 Wn.2d 1026, 435 P.3d 267 (2019). There, the trial court issued a permanent injunction preventing Save Tacoma Water (STW) from placing two

11

initiatives on the Tacoma municipal ballot that would limit the availability of Tacoma's water service. Id. at 566-67. It determined that the initiatives were beyond the scope of the local initiative power. Id. at 566.

On appeal, STW argued that the trial court's determination and issuance of an injunction violated its free speech rights under the federal and state constitutions. Id. at 576. This court disagreed. Id. at 577, 579. It explained that this argument was rejected by the Ninth Circuit in Angle v. Miller, 673 F.3d 1122 (2012),[8] and differentiated the injunction from one that classifies speech on the basis of subject matter or content. Port of Tacoma, 4 Wn. App. 2d at 577-78. It stated,

> [T]he injunction rests on the principles that a measure is beyond the local initiative power if it is administrative or in conflict with state law. Neither the injunction nor the principles on which it is based distinguish among measures or in associated speech activities on the basis of content or subject matter.

Id. at 578.

Similarly here, the preliminary injunction rests on the principle that a measure is beyond the local initiative power if it is administrative in nature. Respect Washington asserts that, unlike Port of Tacoma, "it is the First Amendment right of the people of Burien which has been violated." This distinction between Respect Washington's free speech rights, and the rights of the City's voters, is not meaningful. Respect Washington cites no authority for the proposition that the City's voters have a free speech right under the federal or state

---

[8] The Angle court held that "[t]here is no First Amendment right to place an initiative on the ballot." Id. at 1133.

constitutions to vote on an initiative that exceeds the scope of the local initiative power. Where no authorities are cited in support of a proposition, this court "may assume that counsel, after diligent search, has found none." DeHeer v. Seattle Post-Intelligencer, 60 Wn.2d 122, 126, 372 P.2d 193 (1962). Therefore, we do not consider this argument. RAP 10.3(a)(6) (requiring arguments to be supported by legal authority).

The preliminary injunction was based on the initiative exceeding the scope of the local initiative power, not the substance of the policy stance taken. It does not violate the free speech rights of the City's voters.

B. Status Quo

Respect Washington argues that the trial court improperly disposed of the entire case by granting BCI "all that they sought in their [c]omplaint." It states that, by issuing the preliminary injunction on the same date as the deadline for sending ballots to the printer, the trial court "ensured that Measure 1 would not appear on the ballot and thus disposed of the case under the guise of granting a preliminary injunction." Respect Washington also contends that, by removing Measure 1 from the ballot, the trial court improperly altered the status quo that existed prior to BCI filing its complaint.

First, Respect Washington asserts that the trial court erred by effectively disposing of this case on the merits when it granted the preliminary injunction. It relies on a proposition from a 1940 State Supreme Court case providing that, where a preliminary injunction would effectively grant all the relief that could be obtained by a final decree and would practically dispose of the whole case, it will

13

not be granted. State ex rel. Pay Less Drug Stores v. Sutton, 2 Wn.2d 523, 532, 98 P.2d 680 (1940).

In BCI's complaint, it sought a declaratory judgment that "Measure 1 is procedurally and substantively invalid," an injunction preventing Measure 1's placement on the November 2017 ballot, attorney fees and costs, and "further relief as the [c]ourt deems just and proper." On September 14, 2017, the same day as the printing deadline, the trial court issued a preliminary injunction finding Measure 1 invalid and preventing its placement on the November 7, 2017 ballot. The court appeared to contemplate future action in the case, stating that "[t]he injury if Measure No. 1 is placed on the ballot now outweighs any delay in having the Measure on the ballot at a future point in time; mere delay is not the same as an outright denial."

After the trial court issued the preliminary injunction, Respect Washington did not seek a stay of the court's decision, or accelerated review by this court. Rather, it waited until October 27, 2017 to file a motion with this court, asking us to treat the order as an appealable order under RAP 2.2(a)(3), or, alternatively, to grant discretionary review. In January 2018, this court found the order appealable, and, in July 2018, the trial court proceedings were stayed.

As a practical matter, the preliminary injunction granted BCI the relief it sought—a determination that Measure 1 is invalid, and an injunction preventing its placement on the November 2017 ballot. But, the preliminary injunction was not a final determination on the merits of the case. It was final only in the sense that the issue did not appear on the November 2017 ballot. But, the trial court appeared

to contemplate future action in the case by referring to the "delay" in having Measure 1 "on the ballot at a future point in time." And, we agree that placing the measure on a future ballot was relief that remained available when the preliminary injunction issued.

Accordingly, because the preliminary injunction was not a final determination on the merits, the trial court did not improperly dispose of the case.

Second, Respect Washington argues that the trial court improperly altered the status quo by granting BCI a preliminary injunction. It states that the status quo as of August 7, 2017 "was that Measure 1 was to appear on the ballot."

A preliminary injunction is designed to preserve the status quo until the trial court can conduct a full hearing on the merits. Serv. Emps. Int'l Union Local 925 v. Univ. of Wash., 4 Wn. App. 2d 605, 621, 423 P.3d 849 (2018), review granted 192 Wn.2d 1016, 438 P.3d 111 (2019). But, the State Supreme Court has repeatedly upheld trial court decisions preventing an initiative's placement on a ballot. See, e.g., Spokane Entrepreneurial Ctr. v. Spokane Moves to Amend Constitution, 185 Wn.2d 97, 100-01, 369 P.3d 140 (2016) (affirming trial court's instruction that initiative be struck from ballot after enough signatures were gathered to place it on ballot); Ruano v. Spellman, 81 Wn.2d 820, 821-22, 829, 505 P.2d 447 (1973) (affirming trial court's decision to enjoin initiative from being placed on ballot after it was certified that initiative had sufficient signatures).

The status quo was that the Ordinance was in effect. The initiative sought to alter the status quo. Its placement on the ballot was contingent upon satisfying the legal requirements for an initiative. Whether it had done so had not been

established and was the subject of the litigation. Respect Washington does not cite authority to the contrary. Where a party fails to cite authority in support of a proposition, this court "may assume that counsel, after diligent search, has found none." DeHeer, 60 Wn.2d at 126.

The trial court did not improperly alter the status quo by issuing the preliminary injunction.

C. Substantial Injury

Respect Washington argues that BCI has not shown "any kind of substantial injury resulting from Measure 1 on the ballot." It asserts that, in BCI's motion, the only specific injury it identified was the "vague claim" of fear of and reluctance to engage with City personnel, offices, and services if Measure 1 becomes law.

In issuing the preliminary injunction, the trial court stated,

> The Court has carefully balanced the relative interests of the parties and the interests of the public. The injury if Measure No. 1 is placed on the ballot now outweighs any delay in having the Measure on the ballot at a future point in time; mere delay is not the same as an outright denial. The Court finds that Plaintiff has established a clear legal right, a well-grounded fear of immediate invasion of that right, and that the action sought to be enjoined will result in actual and substantial injury.

BCI attached to its preliminary injunction motion several declarations addressing future injury. One BCI member, Hugo Garcia, stated that he has close friends who shared that "they have stayed home and limited the time they go out to restaurants or grocery shop due to the anxiety and fear [from] the uncertainty of the sanctuary city ordinance." Rich Stolz, another BCI member and Executive Director of OneAmerica, an immigrant and refugee advocacy organization,

16

discussed the effects of Measure 1 on the immigrant and refugee community. He stated that the "polarizing debate over [Measure 1] has raised fears in the immigrant and refugee community that they should not contact local law enforcement if they need to report crimes or violations of their own rights or property."

Sandy Restrepo, another BCI member and attorney, discussed the effect of Measure 1 on her immigrant clients. She shared that many of her immigrant clients "have stated that they are afraid to send their children to school, go to the grocery store and even call the police to report a crime because the anti-immigrant sentiment has increased since Respect Washington began collecting signatures." She offered one example: undocumented immigrant parents came to her office seeking legal advice, because they were afraid to report to City police that their child was a victim of sexual assault. They went to Restrepo first to see if they would risk deportation if they spoke to police officers. She asserted that "[i]f these repeal efforts continue, our community will only continue to grow more afraid and not be able to access basic services they are entitled to."

Respect Washington argues that, even if BCI's claim of fear is not too vague, BCI's claimed injury "fails to support an injunction because of a lack of causation." It relies on Clapper v. Amnesty International, USA, 568 U.S. 398, 133 S. Ct. 1138, 185 L. Ed. 2d 264 (2013).

In Clapper, the plaintiffs sought an injunction against surveillance authorized by Section 702 of the Foreign Intelligence Surveillance Act of 1978, 50 U.S.C. § 1881a. Id. at 401. They argued that they were suffering ongoing injuries fairly traceable to the law "because the risk of surveillance under § 1881a require[d] them to take costly and burdensome measures to protect the confidentiality of their communications." Id. at 415. The United States Supreme Court rejected this argument. Id. at 416. It found that "[r]espondents' contention that they have standing because they incurred certain costs as a reasonable reaction to a risk of harm is unavailing—because the harm respondents seek to avoid is not certainly impending." Id. Thus, the Court concluded that "respondents cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm." Id.

Unlike Clapper, the issue here is not standing, or manufacturing standing. At issue here is whether residents of the City will be harmed by Measure 1's placement on the ballot and passage. The declarations make clear that harm will result when residents need to contact City employees regarding services or assistance they are entitled to receive. Specifically, they make clear that, if Measure 1 is placed on the ballot, residents' fear of engaging with City personnel would persist. The mere possibility of Measure 1's placement on the November 2017 ballot made residents fearful of deportation and question whether they should report crimes to police. Even if the fear of deportation is a hypothetical future harm, residents' decisions not to report crimes based on that fear would result in harm to the community. And, if Measure 1 passes, residents risk forgoing City assistance

they are entitled to receive in order to avoid inquiries into their immigration status. These harms are neither speculative nor manufactured.

The trial court did not abuse its discretion in finding that Measure 1's placement on the ballot would result in actual and substantial injury.

III.  Local Initiative Power

Respect Washington argues that Measure 1 should not have been stricken from the ballot, because it is within the scope of the local initiative power and legislative in nature. The trial court determined that Measure 1 is invalid because it exceeds the scope of the initiative power and is administrative in nature. Whether an initiative is beyond the scope of the local initiative power is a question of law that this court reviews de novo. Protect Pub. Health v. Freed, 192 Wn.2d 477, 482, 430 P.3d 640 (2018).

This court generally disfavors preelection review. Id. But, there are narrow exceptions to this prohibition. Id. One exception "involves determining whether the 'proposed law is beyond the scope of the initiative power.'" Id. (quoting Seattle Bldg. & Constr. Trades Council v. City of Seattle, 94 Wn.2d 740, 746, 620 P.2d 82 (1980)). While statewide initiatives are subject to the scope of the state legislative power, local initiatives are subject to the scope of the local legislative power. Id. "These powers are not equivalent." Id.

Under Amendment 7 to the Washington Constitution, "the people secured for themselves the right to legislate directly." City of Port Angeles v. Our Water-Our Choice!, 170 Wn.2d 1, 7-8, 239 P.3d 589 (2010). However, Amendment 7 does not apply to municipal governments. Id. The scope of the local initiative

power is instead governed by statutes and county charters, "and preelection challenges are subject to a different analysis." Protect Pub. Health, 192 Wn.2d at 482. The State Supreme Court has recognized multiple limits on the local initiative power, including the limit that "a local 'initiative is beyond the scope of the initiative power if the initiative involves powers granted by the legislature to the governing body of a city, rather than the city itself.'" Id. at 482-83 (quoting City of Sequim v. Malkasian, 157 Wn.2d 251, 261, 138 P.3d 943 (2006)).

A municipality's governing body, also referred to as its "legislative authority," "includes the mayor and the city council, but not the electorate." Id. at 483. "When the legislature enacts a general law granting authority to the legislative body (or legislative authority) of a city, that legislative body's authority is not subject to 'repeal, amendment, or modification by the people through the initiative or referendum process.'" Mukilteo Citizens for Simple Gov't v. City of Mukilteo, 174 Wn.2d 41, 51, 272 P.3d 227 (2012) (quoting Malkasian, 157 Wn.2d at 265). This court looks to the language of the relevant statute to determine the scope of the authority granted by the legislature to the local governing body. Id.

BCI argues that the legislature has delegated to the City's governing body, not the City itself, "the powers that Measure 1 seeks to wield through initiative." The City is a code city. BMC 2.26.010. Under RCW 35A.11.020, "The legislative body of each code city shall have power to organize and regulate its internal affairs within the provisions of this title and its charter, if any; and to define the functions, powers, and duties of its officers and employees." (Emphasis added.)

20

Measure 1 seeks to repeal an ordinance that, under RCW 35A.11.020, the legislature granted the Burien City Council authority to pass—the power "to define the functions, powers, and duties of its officers and employees." Measure 1 would also add a chapter to the BMC providing that the City "shall not regulate the acquisition of immigration status or religious affiliation unless such regulation is approved by a majority vote of the City Council and a majority vote of the people at a municipal general election." This provision would further constrain the Burien City Council from exercising its authority to define the functions, powers, and duties of its officers and employees on the subject of immigration and religious inquiries.

Respect Washington argues that, in Our Water-Our Choice!, the State Supreme Court rejected a similar argument regarding RCW 35A.11.020. There, this court struck two initiatives relating to the regulation of Port Angeles's water supply on the grounds that the legislature intended Port Angeles's legislative body, not the city as a whole, to manage its water system. Our Water-Our Choice!, 170 Wn.2d at 5, 14-15 n.7. It relied on the provision in RCW 35A.11.020 that "'[t]he legislative body of each code city shall have all powers [necessary for] operating and supplying of utilities and municipal services commonly or conveniently rendered by cities or towns.'" Id. at 14 n.7 (alteration in original).

The State Supreme Court affirmed this court on an alternative grounds, finding that the initiatives were administrative in nature. Id. at 15-16. It did not reach the issue of whether the legislature intended only for Port Angeles's legislative body to manage its water system. Id. at 14-15 n.7. But, it observed in

a footnote that, when read out of context, the citation to RCW 35A.11.020 "could have unintended consequences." Id. It explained,

> Given that the same chapter of the RCW specifically authorizes noncharter code cities to "provide for the exercise . . . of the powers of initiative and referendum upon electing to do so," RCW 35A.11.080, reading RCW 35A.11.020 expansively strains the statutory fabric. In our view, RCW 35A.11.020 grants code cities broad, though specific, powers . . . and does not necessarily speak to whether the state legislature intended to grant those powers only to its municipal counterpart.

Id. (first alteration in original). Thus, the court indicated that the powers the legislature granted the legislative bodies of code cities in RCW 35A.11.020 may not be exclusive, and may be subject to a city's initiative power. If that is the case, BCI's argument fails.

Alternatively, the trial court here found that Measure 1 is invalid because it is administrative in nature. "[A]dministrative matters, particularly local administrative matters, are not subject to initiative or referendum." Our Water-Our Choice!, 170 Wn.2d at 8. Generally, "a local government action is administrative if it furthers (or hinders) a plan the local government or some power superior to it has previously adopted." Id. at 10. The State Supreme Court has noted that discerning whether a proposed initiative is administrative or legislative in nature can be difficult. Spokane Entrepreneurial Ctr., 185 Wn.2d at 107. In one case, it described the question as "whether the proposition is one to make new law or declare a new policy, or merely to carry out and execute law or policy already in existence." Ruano, 81 Wn.2d at 823-24.

22

Measure 1 seeks to repeal the Ordinance, which prohibits City employees from conditioning services on an individual's immigration status, and prohibits City personnel from initiating an enforcement action based solely on an individual's immigration status, race, and other factors. The Ordinance also states,

> A goal of this legislation is to foster trust and cooperation between city personnel and law enforcement officials and immigrant communities to heighten crime prevention and public safety.

> Since 1992, the King County sheriff's office has embraced this goal and outlined supporting policies in its operations manual, with which this ordinance is consistent.

> Another goal of this legislation is to promote the public health of City of Burien residents.

> On April 22, 2008, King County Superior Court affirmed the principle that our courts must remain open and accessible for all individuals and families to resolve disputes on the merits by adopting a policy that warrants for the arrest of individuals based on their immigration status shall not be executed within any of the superior court courtrooms unless directly ordered by the presiding judicial officer and shall be discouraged in the superior court courthouses, unless the public's safety is at immediate risk. Shortly after the affirmation's adoption, the King County Executive and Immigration and Customs Enforcement agreed to honor this policy.

In Global Neighborhood, this court found that a similar initiative was administrative in nature, because it hindered a plan previously adopted by the local government. See 7 Wn. App. 2d at 399-400. There, the Spokane City Council had enacted two ordinances prohibiting Spokane Police Department officers from engaging in bias-based profiling, and, unless required by law, from inquiring into a person's immigration status. Id. at 367-68. These ordinances codified two previously adopted Spokane Police Department policies. Id. at 367. One month later, Respect Washington submitted a proposed initiative, Proposition 1, that

would (1) amend one of the ordinances to eliminate citizenship status from the list of prohibited factors for city police to consider during investigations, (2) repeal the other ordinance, and (3) add a new code section that would prohibit Spokane from limiting any city employee from collecting immigration status information and sharing that information with federal authorities. Id. at 360, 368.

In March 2017, Proposition 1 was placed on the November 2017 ballot. Id. at 369. But, before the election, the trial court entered an injunction removing it from the ballot. Id. at 374. It determined that Proposition 1 was invalid because it was "administrative in nature and thereby exceed[ed] the local initiative power." Id.

This court affirmed the trial court on appeal. Id. at 405. In doing so, it recognized that Proposition 1 had at least one characteristic in common with legislative acts—it adopted "a rule of government permanent in nature." Id. at 398. And, it agreed with Respect Washington that Proposition 1 maintained some legislative character "in that the initiative modifie[d], if not reverse[d] in part, legislative policy established by the city council." Id. at 398-99. But, this court stated that in "analyzing the legislative or administrative nature of a municipal act, courts consider the framework of the action." Id. at 399. It explained that Proposition 1 challenged a Spokane policy, "whose framework's base consists of administrative building blocks." Id.

Specifically, this court noted that Proposition 1 interfered with "Spokane Police Department policy to limit the circumstances under which law enforcement officers inquire about immigration and citizenship status." Id. Thus, it determined

24

that Proposition 1 hindered a policy previously adopted by the local government. Id. It also observed that, though it was unaware of any decision expressly holding that directions to employees constitute administrative policy, logic supports the conclusion that "directions to employees constitute administrative, not legislative, policy." Id. at 400. And, it emphasized "the need for expertise on the challenging and charged question of whether local government agents should question individuals about immigration or citizenship status." Id. It concluded that questioning regarding one's citizenship status should "be reserved to the expertise of law enforcement administrators." Id. at 401.

Here, BCI does not argue that the Ordinance was based on policies adopted by the Burien Police Department, similar to the ordinances in Global Neighborhood. But, a goal of the Ordinance is to "foster trust and cooperation between city personnel and law enforcement officials and immigrant communities to heighten crime prevention and public safety." The Ordinance is consistent with policies supporting this goal in the King County Sheriff's Office operations manual.[9] The Ordinance also notes that the King County Superior Court has adopted a policy that "warrants for the arrest of individuals based on their immigration status shall not be executed within any of the superior court courtrooms unless directly ordered by the presiding judicial officer." And, it states that the Ordinance is "intended to be consistent with federal laws regarding communications between local jurisdictions and federal immigration authorities."

---

[9] Consistency with the King County Sheriff's Office operations manual is relevant, because the City contracts with the King County Sheriff's Office for police services.

Measure 1's attempt to repeal the Ordinance and forbid the Burien City Council from regulating immigration and religious affiliation inquiries is an attempt to hinder a plan already adopted by the City. Rather than a new law or policy, it is an obstacle to implementing the Ordinance, which is meant to be consistent with King County policies and federal law.

The Ordinance also involves directions to City officials, employees, and agents. It forbids them from taking certain actions. Measure 1 would repeal these directions. At oral argument, Respect Washington agreed that Measure 1 is "untying [City staffs'] hands," and "saying . . . they are no longer prohibited from asking about immigration." As this court noted in Global Neighborhood, logic supports the conclusion that "directions to employees constitute administrative, not legislative, policy." 7 Wn. App. 2d at 400. Administrative matters are not subject to initiative or referendum. Our-Water-Our Choice!, 170 Wn.2d at 8.

And, as this court also noted, there is a need for expertise on the question of whether local government agents should question individuals about immigration or citizenship status. Global Neighborhood, 7 Wn. App. 2d at 400. The "need to weigh conflicting goals before establishing a policy of asking or withholding questioning regarding one's citizenship status" is recognized in case law and literature. Id. at 400-01. "Local law enforcement agencies must also navigate constitutional protections afforded residents before asking for information on one's status." Id. at 401. Because these factors implicate the success of law enforcement efforts, "questioning should be reserved to the expertise of law enforcement administrators." Id.

26

Accordingly, we hold that Measure 1 is invalid because it is administrative in nature.[10]

We affirm.

WE CONCUR:

_____  Appelwick, C.J.

_____  _____
Chun, J.                         Verellen, J.

---

[10] Because we hold that Measure 1 is invalid, we need not reach Respect Washington's argument regarding the petition used to gather signatures for Measure 1.